A02A0948. NICHOLSON v. WINDHAM et al.
(571 SE2d 466)

RUFFIN, Presiding Judge.

Donna Nicholson sued the law firm of Windham & Sauls, P.C., three lawyers at the firm, and five other employees (collectively "defendants") for allegedly violating Georgia's Racketeer Influenced & Corrupt Organizations ("RICO") Act,[1] conspiracy to violate the RICO Act, aiding and abetting the violation of the RICO Act, tortious interference with contractual rights, civil conspiracy, intentional infliction of emotional distress, defamation, libel, and slander. The defendants moved to dismiss the complaint, asserting that Nicholson lacked standing to bring a civil action under the RICO Act and that

---

her complaint failed to state a claim for any other cause of action. The trial court dismissed the complaint in its entirety, and this appeal ensued. For the reasons that follow, we affirm in part and reverse in part.

1. Nicholson contends that the trial court erred in dismissing her claims against the defendants for violating the RICO Act, conspiracy to violate the RICO Act, and for aiding and abetting a RICO violation. We disagree.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof, and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.[2]

In addition, this Court conducts a de novo review of a trial court's order dismissing a complaint for failure to state a claim.[3] With these fundamental rules in mind, we now consider the dismissed claims.

As a mandatory condition to asserting the RICO claims, Nicholson must show a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury she purportedly sustained.[4] Specifically, a private plaintiff under the RICO Act must "show that the injury suffered flowed *directly* from the predicate offense."[5] In other words, Nicholson must show that her injury was caused "by reason of" a violation of one of the specific crimes listed in OCGA § 16-14-3 (9) (A).[6]

In framing her RICO claims, Nicholson alleged that Windham & Sauls was operating a RICO enterprise, which she characterized as a "real estate transaction closing mill." In her complaint, Nicholson alleged that the defendants engaged in predicate acts that included,

---

[2] (Punctuation omitted.) *Bakhtiarnejad v. Cox Enterprises*, 247 Ga. App. 205, 207-208 (1) (541 SE2d 33) (2000).

[3] See *Project Control Svcs. v. Reynolds*, 247 Ga. App. 889, 891 (1) (545 SE2d 593) (2001).

[4] See *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 805 (1) (500 SE2d 591) (1998).

[5] (Emphasis supplied.) *Gentry v. Volkswagen of America*, 238 Ga. App. 785, 791 (4) (521 SE2d 13) (1999).

[6] (Punctuation and emphasis omitted.) *Maddox*, supra at 805 (1).

inter alia, theft, tampering with evidence, obstruction of justice, mail fraud, and wire fraud. Nicholson also alleged that the defendants solicited her participation in the scheme. According to Nicholson, after she refused to participate in the scheme and complained about the alleged criminal acts, she was fired. Nicholson contends that her premature termination constitutes the injury which forms the basis of her RICO complaint.

Even assuming, as we do, that the allegations in the complaint are true, Nicholson still fails to prove a RICO violation because she is unable to demonstrate that she was directly harmed, as opposed to being indirectly harmed, by the predicate acts allegedly committed by the defendants.[7] Nicholson alleged that the defendants engaged in racketeering activities including theft, mail fraud, wire fraud, tampering with evidence, obstruction, and stealing. However, none of these acts was directed at Nicholson.[8]

On appeal, Nicholson asserts that her RICO claim should survive the motion to dismiss because the defendants allegedly solicited her participation in the illegal activities. Under OCGA § 16-14-3 (9) (A), solicitation of another to commit another crime constitutes a racketeering activity. Thus, Nicholson argues, her termination stemmed from defendants' solicitation, and therefore flows directly from a predicate act. Again, we disagree.

Although the defendants allegedly solicited Nicholson's participation, she refused and was fired. Accordingly, the injury — Nicholson's termination — stemmed from her refusal to participate rather than the solicitation itself. Under these circumstances, the harm is indirect rather than direct.[9] Moreover, we fail to see how termination from questionable employment can constitute harm. According to Nicholson's complaint, the defendants were embroiled in numerous illegal activities. It seems reasonable to conclude that no employee of the firm would have a vested right to continue in such activity. It follows that Nicholson, having sustained at best an indirect injury, lacks standing to pursue her RICO claims.[10]

2. Nicholson contends that the trial court erred in dismissing her claim for tortious interference with contract. The complaint alleges that Nicholson entered a contract with Maristaff, Inc., which apparently is a temporary service that assigned Nicholson to Windham & Sauls. According to Nicholson, after observing illegal conduct and asking too many questions, she was demoted and then fired.[11] Nichol-

---

[7] See *Gentry*, supra at 791.

[8] See *Maddox*, supra at 806.

[9] See *Cullom v. Hibernia Nat. Bank*, 859 F2d 1211, 1217-1218 (5th Cir. 1988).

[10] See *Gentry*, supra at 791-792.

[11] Although not entirely clear from Nicholson's complaint, we assume she was terminated from Maristaff.

son alleges that, by terminating her employment "prematurely," defendants tortiously interfered with her contract with Maristaff.

To prevail on her claim for tortious interference with contract, Nicholson must prove the existence of a contract and must "establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered."[12] An intended third-party beneficiary of a contract, who is legally authorized to enforce the contract, "cannot be held liable for tortious interference since he is not a stranger to the contract."[13] Furthermore, "[t]he exclusion of third-party beneficiaries from the 'stranger doctrine' has been expanded to cover those who benefit from the contract of others, without regard to whether the beneficiary was intended by the contracting parties to be a third-party beneficiary."[14] Here, the law firm clearly was a beneficiary of Nicholson's employment contract and, thus, cannot be held liable for tortious interference.[15]

The individual defendants argue that they, too, cannot be held liable because "in Georgia, co-employees stand in the place of the employer for the purpose of determining whether one is a stranger to a contract." It is true that co-employees engaged in conduct "within the scope of their authority" cannot then be held liable for such conduct in the guise of a tortious interference claim.[16] That is not to say, however, that all co-workers are immune from suit for tortious interference. If a co-worker with no authority to discharge Nicholson, "being activated by an unlawful scheme or purpose to injure and damage [her], maliciously and unlawfully persuades the employer to breach the contract with" her, such co-worker may be liable for tortious interference.[17]

Construed as true, the allegations in Nicholson's complaint demonstrate that the individual defendants engaged in unlawful conduct by soliciting her to engage in criminal activity and causing her termination when she refused. Nicholson does not allege that these actions fell within the scope of individual defendants' employment. It certainly is possible for Nicholson to discover evidence that such activities were not within the scope of the individual defendants'

---

[12] *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 608 (2) (503 SE2d 278) (1998).

[13] Id. at 609. See also *Cohen v. William Goldberg & Co.*, 202 Ga. App. 172, 177-178 (3) (413 SE2d 759) (1991), rev'd on other grounds, 262 Ga. 606 (423 SE2d 231) (1992).

[14] *McLane*, supra at 609.

[15] See *Dong v. Shepeard Community Blood Center*, 240 Ga. App. 137, 139 (2) (522 SE2d 720) (1999).

[16] See *Lane v. K-Mart Corp.*, 190 Ga. App. 113, 114 (2) (378 SE2d 136) (1989); *Dong*, supra.

[17] (Punctuation omitted.) *Rose v. Zurowski*, 236 Ga. App. 157, 158 (1) (511 SE2d 265) (1999).

employment, which would create a jury issue as to whether the individual defendants tortiously interfered with Nicholson's employment contract.[18] Thus, the trial court erred in granting the motion to dismiss with regard to Nicholson's claim of tortious interference against the individual defendants.

3. Nicholson contends that the trial court erred in dismissing her claim for intentional infliction of emotional distress. She asserts that allegations are sufficient to support such a claim. We agree.

This tort requires proof of four elements: (1) intentional or reckless conduct; (2) which is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress.[19] "[T]o warrant recovery[,] the conduct also must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. Otherwise, the conduct will not rise to the requisite level of outrageousness and egregiousness."[20]

Nicholson alleged in her complaint that she suffered extreme emotional distress as the result of the wilful, malicious, and intentional acts of the defendants. She claimed that the defendants tried to require her "to become a criminal in order to perform her obligations under a contract" and that such conduct was so outrageous and extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Nicholson alleged that she "was directed by members of the RICO Enterprise to ignore and not to disclose the conduct or evidence of the illegal and fraudulent conduct. . . ." According to Nicholson, "[a]s a result of the acts identified in this Complaint and such other acts to be shown by evidence, including the conspiracy . . . to commit illegal acts . . . and the further conspiracy to cover up those acts, [she] . . . suffered injuries to person and property." She claimed to have sustained "emotional distress that defies description."

As previously discussed, a motion to dismiss for failure to state a claim "should not be granted unless the complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim."[21] When the complaint is construed most favorably toward Nicholson, it is possible that Nicholson would be entitled to recover for intentional

---

[18] See *Troy v. Interfinancial, Inc.*, 171 Ga. App. 763, 768-769 (2) (320 SE2d 872) (1984).
[19] See *Clark v. Arras*, 212 Ga. App. 695, 696 (2) (443 SE2d 277) (1994).
[20] (Punctuation omitted.) Id.
[21] *Property Pickup v. Morgan*, 249 Ga. 239, 240 (290 SE2d 52) (1982).

434

infliction of emotional distress.[22] Therefore, the trial court erred in dismissing this claim.[23]

4. Nicholson contends that the trial court erred in dismissing her claims for defamation. In her complaint, Nicholson made broad allegations that the defendants engaged in libel, libel per se, and slander which, after discovery, she will be able to support with evidence.

Although the averments in Nicholson's complaint are vague at best, we nonetheless apply the following standard:

> [a] complaint is not required to set forth a cause of action, but need only set forth a claim for relief. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient. From this perspective, we cannot say with precise certainty that [Nicholson's] . . . claim[s] against [the defendants] cannot be sustained.[24]

After discovery is completed, a cognizable basis for these tort claims may well be found lacking.[25] Nevertheless, now is not the time to gauge the merits of the underlying claims.[26] Thus, notwithstanding the vague nature of Nicholson's claims, the trial court erred in dismissing them at this early stage in the proceedings.[27]

5. Nicholson asserts that the trial court erred in dismissing her claim for civil conspiracy. We agree.

> A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. Accurately speaking, there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone.[28]

---

[22] See *Smith v. Germania of America*, 249 Ga. App. 587, 588 (1) (549 SE2d 423) (2001).

[23] See *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991) (if claimant presents evidence from which reasonable persons might find the presence of extreme and outrageous conduct that results in severe emotional distress, then a jury issue remains).

[24] (Citations and punctuation omitted.) *Gillis v. American Gen. Life &c. Ins. Co.*, 222 Ga. App. 891, 892-893 (476 SE2d 648) (1996).

[25] Apparently, no discovery has yet occurred since the defendants filed a motion to stay discovery simultaneously with their motion to dismiss.

[26] Id. at 893.

[27] See *Christner v. Eason*, 146 Ga. App. 139, 140 (245 SE2d 489) (1978).

[28] (Citation, punctuation and emphasis omitted.) *First Fed. Sav. Bank v. Hart*, 185 Ga. App. 304, 305 (2) (363 SE2d 832) (1987).

"The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done."[29] By its very nature, civil conspiracy is "a secret endeavor" and "rarely open to direct proof."[30] Having examined the allegations in Nicholson's complaint about the nature of the alleged wrongdoers' acts, the relationship among the defendants, and their mutual interest in not disclosing their actions, we find that Nicholson set forth a cognizable claim for civil conspiracy that was not subject to dismissal.[31]

6. The trial court did not err in dismissing the claim for a declaratory judgment. The purpose of the Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."[32] Here, the rights of the parties have already accrued, and there are no circumstances requiring a determination of some dispute to guide and protect the plaintiff from uncertainty as to a future act.[33] The trial court properly dismissed this claim.[34]

*Judgment affirmed in part and reversed in part. Barnes, J., and Pope, Senior Appellate Judge, concur.*

DECIDED SEPTEMBER 18, 2002 — 

*Millard C. Farmer, Jr.*, for appellant.

*Hawkins & Parnell, Emory L. Palmer, Christine L. Mast, H. Lane Young II, Oliver & Winkle, G. Robert Oliver, Anne Zavala-Moushey*, for appellees.

[29] (Punctuation omitted.) Id.
[30] *Cumberland Center Assoc. v. Southeast Mgmt. &c. Corp.*, 228 Ga. App. 571, 579 (3) (a) (492 SE2d 546) (1997), rev'd on other grounds, *McLane*, supra at 610.
[31] See id.
[32] OCGA § 9-4-1.
[33] See *Morgan v. Guaranty Nat. Cos.*, 268 Ga. 343, 344-345 (489 SE2d 803) (1997).
[34] See id. at 346.