**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 16, 2013

# In the Court of Appeals of Georgia

A13A0132. WYLIE v. DENTON, et al.

A13A0133. SUNTRUST BANK v. DENTON, et al.

BRANCH, Judge.

These related appeals arise out of the termination of Angie Denton, Lynette Kearney, Donna O'Berry, Krystal Sikes, and Terri Smith (collectively "plaintiffs") from their employment with SunTrust Bank. After they were fired, the plaintiffs filed the current action against several defendants, including Samuel Wylie, their supervisor at SunTrust, and the bank. Both their original and amended complaints assert claims against Wylie and SunTrust for violations of the Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO)[1], conspiracy to violate the Georgia RICO statute, common law fraud, and defamation. SunTrust filed a motion to dismiss the complaint

---

[1] OCGA § 16-14-1, et seq.

in its entirety or, in the alternative, for a more definite statement, asserting that the facts alleged in the original complaint were insufficient to support the plaintiffs' claims. The bank also filed a separate motion to dismiss under OCGA § 9-11-12 (b) (6), on the grounds that the plaintiffs' RICO and common law fraud claims failed as a matter of law. Wylie filed a motion to dismiss the complaint in its entirety or, in the alternative, for a more definite statement. Additionally, he joined SunTrust's motion under OCGA § 9-11-12 (b) (6) to dismiss the plaintiffs' RICO and fraud claims. The trial court entered a series of orders in which it granted Wylie's motion for a more definite statement,[2] denied Wylie's motion to dismiss the complaint for insufficient pleadings, denied the parties' joint motion to dismiss the RICO and fraud claims, , and denied SunTrust's motion to dismiss the complaint or, in the alternative, for a more definite statement. The trial court certified its orders for immediate review, Wylie and SunTrust each filed an application for an interlocutory appeal, and we granted both applications. These appeals followed.

In Case No. A13A0132, Wylie appeals from the orders of the trial court denying his motion to dismiss the complaint in its entirety because of insufficient

---

[2] It was after the entry of this order that the plaintiffs filed their amended complaint.

2

pleadings and denying the joint motion to dismiss plaintiffs' RICO and common law fraud claims. In Case No. A13A0133, SunTrust appeals from the orders of the trial court denying its motion to dismiss the complaint or, in the alternative, for a more definite statement, and the joint motion to dismiss the RICO and common law fraud claims asserted by the plaintiffs. For reasons explained below, we find that the plaintiffs cannot state a claim under the Georgia RICO statute or for common law fraud. We therefore reverse the orders of the trial court, entered in both Case No. A13A0132 and Case No. A13A0133, denying Wylie's and SunTrust's joint motion to dismiss those claims. Additionally, in Case No. A13A0132 we vacate the order of the trial court denying Wylie's motion to dismiss the plaintiffs' remaining claim, for defamation, and remand with direction. And in Case No. A13A0133 we vacate the order denying SunTrust's motion to dismiss or, in the alternative, for a more definite statement of plaintiffs' defamation claim and remand with direction.

The standard of review for a trial court's order on a motion to dismiss is de novo, and "we treat all well-pled material allegations by the nonmovant as true and all denials by the movant as false. Only if the pleadings and exhibits incorporated into the pleadings show a complete failure by the plaintiff to state a cause of action, is the

3

defendant entitled to judgment as a matter of law." (Citation, punctuation and footnote omitted.) *Crosby v. Pittman*, 305 Ga. App. 639 (700 SE2d 629) (2010).

According to the complaint, the plaintiffs were all employed as tellers at a SunTrust branch in Waycross during the relevant time period. They allege that some time in the mid to late 2000's, Sandy Ursery, an employee of SunTrust client Clayton Homes, Inc., began to embezzle money from the Clayton Homes account. Ursery allegedly accomplished this embezzlement by presenting checks made payable to fictitious Clayton Homes employees or former employees, who no longer worked for the company.[3] SunTrust cashed the checks without requiring Ursery to present a valid form of identification for the people to whom the checks were made out.

According to the plaintiffs, when Ursery first began presenting checks made out to third parties and for whom she could present no valid form of identification, they refused to cash them. Ursery then contacted Wylie, who directed each of the plaintiffs "not to question Ursery when she presented checks, but instead to cash the checks for Ursery as presented without [requiring identification]." The plaintiffs contend that they periodically questioned Wylie about this practice, and "[h]e consistently and

[3] In their original complaint, the plaintiffs alleged that these employees were supposedly illegal, undocumented workers, who lacked the identification necessary to cash their own paychecks.

4

repeatedly told [them] to forget banking practices and laws as they understood them, and insisted that they continue to cash the checks" presented by Ursery without requiring proper identification. Additionally, when SunTrust began to impose a $5 fee for cashing the check of any person who did not maintain a SunTrust account, Wylie directed the plaintiffs to waive the fee for any Clayton Homes checks made payable to third parties and presented by Ursery.

Clayton Homes discovered Ursery's long-term embezzlement in November 2010 and at that time it contacted SunTrust regarding the money stolen by Ursery. SunTrust then conducted an internal investigation, during which it interviewed each of the plaintiffs. Following their interviews, each plaintiff was instructed "to comply with the bank's written policy [regarding the identification required to cash a check] going forward, and to talk to no one, including each other," about the embezzlement.

SunTrust eventually reimbursed Clayton Homes the money Ursery embezzled from its account, after allegedly securing a confidentiality agreement with the company. According to the complaint, SunTrust then filed a report with bank regulators and/or the United States Department of Justice ("DOJ") that failed to reveal that SunTrust management had ordered the plaintiffs to cash the checks presented by Ursery without requiring proper identification.

On April 20, 2011, approximately five months after Clayton Homes first reported Ursery's embezzlement, the plaintiffs' employment with SunTrust was terminated. The reason given for the plaintiffs' firing was their violations of "bank policy in the cashing of . . . checks" on the Clayton Homes account. The plaintiffs, allege, however, that SunTrust actually fired them in an effort to cover up the role that it and Wylie played in Ursery's scheme to embezzle money from her employer. They also contend that to further its cover-up efforts, the bank confiscated all of the notes and other documents that plaintiffs had kept at the Waycross branch that reflected Wylie's and SunTrust's role in the embezzlement scheme. Following their termination, the plaintiffs filed the current lawsuit against Suntrust, Wylie, Clayton Homes, and Ursery.[4]

*The Joint Motion to Dismiss*

Wylie's and SunTrusts's separate appeals from the trial court's denial of their joint motion to dismiss the plaintiffs' RICO and common law fraud claims present

---

[4] Ursery is not a party to this appeal and Clayton Homes is no longer a party to this action. After plaintiffs filed their complaint, Clayton Homes removed the case to the United States District Court for the Southern District of Georgia. That court remanded the case back to the State Court of Ware County. Following remand, the plaintiffs moved to dismiss voluntarily its claims against Clayton Homes without prejudice, and the trial court granted that motion.

6

identical claims of error; we therefore address these appeals together. In support of

their appeals, Wylie and SunTrust argue that even if proved, the facts alleged in the

complaint cannot support the RICO and fraud claims as a matter of law. We agree.

1. Under Georgia's RICO statute, it is "unlawful for any person, through a

pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain,

directly or indirectly, any interest in or control of any enterprise, real property, or

personal property of any nature, including money." OCGA § 16-14-4 (a). A

"racketeering activity," also known as a "predicate act," is the commission of, the

attempt to commit, or the solicitation or coercing of another to commit, a "crime

which is chargeable by indictment" under one of forty categories of offenses. OCGA

§ 16-14-3 (9) (A) (i)-(xl). And a "pattern of racketeering activity" means that there

have been at least two acts of racketeering activity that are interrelated[5] and that were

done "in furtherance of one or more incidents, schemes, or transactions." OCGA § 16-

14-3 (8) (A). Additionally, it is unlawful to conspire to violate the substantive

provisions of Georgia's RICO Act. OCGA § 16–14–4 (c). Under Georgia law, a

---

[5] Predicate acts will be considered interrelated where they "have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents." OCGA § 16-14-3 (8) (A).

person may be found liable for RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." (Citation omitted.) *Rosen v. Protective Life Ins. Co.*, 817 FSupp2d 1357, 1382 (II) (G) (N. D. Ga. 2011) (applying the Georgia RICO statute).

To assert a civil claim based upon either a violation of the RICO statute or a conspiracy to violate that statute, a plaintiff must show that the defendants violated or conspired to violate the RICO statute; that as a result of this conduct the plaintiff has suffered injury; and that the defendant's violation of or conspiracy to violate the RICO statute was the proximate cause of the injury. *Cox v. Mayan Lagoon Estates, Ltd*, 319 Ga. App. 101, 109 (2) (b) (734 SE2d 883) (2012).

As best we can tell from their amended complaint, the plaintiffs are alleging the existence of two separate but related schemes. The first was a scheme to defraud (or conspiring to defraud) Clayton Homes; the second scheme was to cover up the first scheme, by misleading or defrauding (or conspiring to mislead or defraud) federal bank regulators and/or the DOJ. The predicate acts alleged in furtherance of the first scheme are forgery, theft, money laundering, financial institution fraud, and engaging

8

in a monetary transaction with property derived from an unlawful activity.[6] The predicate acts allegedly committed in furtherance of the second scheme are mail and wire fraud, based on the fact that the false statements made to the bank regulators and/or the DOJ were transmitted by mail and electronic means. The injury alleged by the plaintiffs is "the loss of [their] long term employment with benefits at SunTrust Bank."

We find that these allegations are insufficient to support a claim against either Wylie or SunTrust under the Georgia RICO statute. Even assuming that the plaintiffs could prove the facts alleged in their complaint and that the alleged conduct constituted either a violation of the RICO statute or a conspiracy to violate that statute, they cannot establish the required causal connection between these predicate acts and their injuries.

To satisfy the proximate cause element of RICO, a plaintiff must show that her injury flowed directly from at least one of the predicate acts. *Longino v. Bank of Ellijay*, 228 Ga. App. 37, 41 (2) (491 SE2d 81) (1997). This burden is not met where

---

[6] Plaintiffs may also be attempting to allege the commission of wire fraud in conjunction with the first scheme; they allege that they were ordered by Wylie, via e-mail and telephone, to cash the checks presented by Ursery without requiring proper identification.

a plaintiff shows "merely that his injury was an eventual consequence of the [predicate act] or that he would not have been injured but for the [predicate act]." *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 806 (1) (500 SE2d 591) (1998). See also *Nicholson v. Windham*, 257 Ga. App. 429, 430 (1) (571 SE2d 466) (2002) ("[a]s a mandatory condition to asserting [a] RICO claim[], [a plaintiff] must show a *direct nexus* between at least one of the predicate acts [alleged] and the injury she purportedly sustained") (footnote omitted; emphasis supplied); *Gentry v. Volkswagen of America*, 238 Ga. App. 785, 791 (4) (521 S.E.2d 13) (1999) ("[t]he question is whether the injury was *directly caused* by any RICO violation, not whether the injury was [the] reasonably foreseeable" result of the RICO violation) (citation omitted; emphasis supplied). Thus, to survive a motion to dismiss, a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that she was injured. *Longino*, supra. Rather, she must show that her injury was the direct result of a predicate act targeted towards her, such that she was the intended victim. *Nicholson*, supra at 431 (1). See also *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F3d 1292, 1307 (2) (11th Cir. 2003) (in determining whether a plaintiff has satisfactorily alleged a RICO claim, a court should examine whether the alleged predicate acts were aimed at the plaintiff or whether they were aimed primarily at a

10

third party); *Bivens Gardens Office Bldg. v. Barnett Banks of Florida*, 140 F3d 898, 906 (IV) (A) (11th Cir. 1998) (noting that a shareholder or a limited partner in a company that was the target of the alleged RICO violation does not have standing to sue for the losses he sustained as a result of the racketeering activity against the company).

With respect to the question of whether the plaintiffs here have alleged a sufficient causal relationship between the predicate acts alleged and their injury, we find two cases to be particularly instructive. The first is *Morast v. Lance*, 631 F Supp. 474 (N. D .Ga. 1986), abrogated in part on other grounds, *Haddle v. Garrison*, 525 U.S. 121, 125-126 (119 SCt 489, 142 LE2d 502) (1998).[7] Morast was a former bank officer who was fired from his job after he cooperated in an investigation by the Comptroller of the Currency into an illegal transaction by the bank. He then filed suit against the bank and its officers asserting a number of claims, including claims under both the federal and Georgia RICO statutes. In support of his RICO claims, Morast alleged that the bank had engaged in a number of predicate acts in the form of banking

---

[7] "Because Georgia's RICO statute is modeled upon the federal RICO statute, we find federal authority to be persuasive in addressing th[e] issue" of whether a plaintiff has pled sufficient facts to satisfy RICO's proximate cause requirement. *Cox*, supra, at 108 (2) (b).

11

violations and that he had been fired after discovering these violations, refusing to help cover up the violations, and cooperating with the federal investigation. The trial court granted the bank's motion to dismiss the RICO claims, noting that Morast did not have standing to sue because his injury – the loss of his employment – was not the direct result of the alleged predicate acts. *Morast*, 631 F Supp., supra at 481. The Eleventh Circuit affirmed the dismissal of Morast's RICO claims, noting that, "Morast's injury, his discharge, did not flow directly from the predicate acts, the defendants' banking violations." (Footnote omitted.) *Morast v. Lance*, 807 F2d 926, 933 (II) (A) (6) (11th Cir. 1987), abrogated in part on other grounds, *Haddle*, supra.

This Court employed a similar rationale in *Nicholson*, supra. After she was fired from her temporary employment with a law firm, Nicholson filed suit against the firm and its partners and employees asserting claims for, among other things, violations of the Georgia RICO Act, conspiracy to violate that Act, and for aiding and abetting violations of the Georgia RICO statute. Id. at 430 (1). With respect to her RICO claims, Nicholson alleged that the law firm "was operating a RICO enterprise, which she characterized as a 'real estate transaction closing mill.'" Id. Her complaint further alleged

12

that the defendants engaged in predicate acts that included, inter alia, theft, tampering with evidence, obstruction of justice, mail fraud, and wire fraud. Nicholson also alleged that the defendants solicited her participation in the scheme. According to Nicholson, after she refused to participate in the scheme and complained about the alleged criminal acts, she was fired. Nicholson contends that her premature termination constitutes the injury which forms the basis of her RICO complaint.

Id. at 430-431 (1).

The trial court granted the defendants' motion to dismiss Nicholson's RICO claims for failure to state a claim and this Court affirmed, holding that even when taken as true, the allegations in the complaint could not satisfy the RICO proximate cause requirement. Specifically, Nicholson could not show the required "direct nexus" between any of the predicate acts and her injury, because "none of the[] [alleged predicate] acts was directed at Nicholson" and therefore she could not "demonstrate that she was directly harmed, as opposed to being indirectly harmed" by those acts. (Footnotes omitted.) Id. "It follows that Nicholson, having sustained at best an indirect injury, lacks standing to pursue her RICO claims." Id. at 431 (1).

As in *Morast* and *Nicholson*, the plaintiffs in this case seek to recover for their injuries (the loss of their jobs) that were the indirect result of predicate acts directed at third parties. Specifically, the plaintiffs' amended complaint alleges predicate acts

13

directed at Clayton Homes (as the victim of the alleged acts of theft, forgery, money laundering, financial institution fraud, and engaging in a monetary transaction with property derived from an unlawful activity) and at federal bank regulators and/or the DOJ (as the victims of the alleged acts of mail and wire fraud). Given this lack of a direct nexus between the predicate acts and the plaintiffs' injuries, the allegations of the plaintiffs' complaint show that they cannot satisfy the proximate cause element of a civil RICO claim and lack standing to bring them. Accordingly, the trial court erred when it denied the joint motion to dismiss the plaintiffs' RICO claims. See *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 134 (1) (709 SE2d 314) (2011) (dismissal of a claim under OCGA § 9-11-12 (b) (6) is appropriate where the allegations of the complaint "'disclose with certainty' that no set of facts consistent with the allegations could be proved that would entitle the plaintiff to the relief he seeks") (citation omitted).

2. We now consider whether the plaintiffs' complaint alleges facts sufficient to support a fraud claim against either Wylie or SunTrust. To state a cause of action for fraud, the plaintiffs were required to allege facts showing that the defendants knowingly made false statements; that they intended for the plaintiffs to act or refrain from acting in reliance on those statements; that the plaintiffs justifiably relied on the

14

false statements; and as a result of their reliance, the plaintiffs suffered damage. *Maddox v. Southern Engineering Co.*, 216 Ga. App. 6, 7 (1) (453 SE2d 70) (1994). A fraud claim is not actionable, however, if it is based on a promise that was unenforceable at the time it was made. See *Dennis v. First National Bank of the South*, 293 Ga. App. 890, 895 (668 SE2d 479) (2008) (there can be "no justifiable reliance on a promise which is unenforceable at the time it is made") (citation and punctuation omitted). And because oral promises of continued employment made to at-will employees are unenforceable as a matter of law, *Balmer v. Elan Corp.*, 278 Ga. 227, 228-229 (2) (599 SE2d 158) (2004), such promises cannot serve as the basis of a fraud claim. Id. at 230 (4).

In *Balmer*, the employer gave oral assurances to several at-will employees that they would not be discharged or otherwise suffer adverse treatment if they provided truthful information to the Food and Drug Administration, which was conducting an inspection of the employer's facility. After they cooperated with the federal inspectors, several employees were fired; they subsequently sued the company, asserting claims for breach of contract, promissory estoppel, fraud, defamation, and violation of whistle-blower laws. The trial court granted the employer's motion to dismiss the claims for breach of contract, promissory estoppel, and fraud, each of

15

which was based on the employer's assurances to the employees that they would suffer no adverse consequences if they cooperated with the FDA. The Georgia Supreme Court affirmed, finding that the breach of contract claim was without merit because oral promises of future employment are not enforceable by at-will employees. Id at 229 (2). The court further held that because the promise upon which the plaintiffs based their fraud claim was unenforceable, the plaintiffs could not prove the justifiable reliance element of that claim and the fraud claim therefore failed as a matter of law. Id. at 230 (4).

Here, the plaintiffs allege that Wylie, as an agent of SunTrust, assured them on several occasions that their failure to require Ursery to present proper identification before cashing the checks she presented would not jeopardize their jobs; that without these assurances they would not have violated bank policy and cashed the checks in question; and as a result of their reliance on these assurances they were damaged. Plaintiffs, however, concede that they were at-will employees of SunTrust. Thus, because the alleged fraudulent statements relied upon by the plaintiffs constituted promises of continued employment, those statements cannot support their claims for fraud. Id. Accordingly, the court below erred in refusing to dismiss those claims. *Benedict*, supra at 134 (1).

16

3. We next address Wylie's appeal from the trial court's denial of his motion to dismiss the plaintiffs' complaint based on the insufficiency of the pleadings. In light of our holdings in Divisions 1 and 2, we address only whether the plaintiffs have sufficiently pled their claim for defamation. In determining this question, we bear in mind that "[t]he Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be construed liberally and reasonably to achieve substantial justice consistent with the statutory requirements of the Act." (Footnote omitted.) *Rucker v. Columbia Nat. Ins. Co.*, 307 Ga. App. 444, 446 (1) (a) (705 SE2d 270) (2010). Thus, "most elements of most claims can be pled in general terms, so long as they give fair notice of the nature of the claims to the defendant." *Bush v. Bank of New York Mellon*, 313 Ga. App. 84, 90 (720 SE2d 370) (2011).

A plaintiff asserting a claim for defamation is generally required to show that the defendant made a false and defamatory statement concerning the plaintiff; that the defendant made an unprivileged communication of that statement to a third party; fault by the defendant constituting at least negligence; and either that the plaintiff suffered special harm or that the statement is actionable even in the absence of special harm. *Renton v. Watson*, 319 Ga. App. 896, 900 (2) (739 SE2d 19) (2013). With

17

respect to their defamation claim, the plaintiffs assert Wylie has published to third parties statements: (i) that plaintiffs were responsible for the losses sustained by SunTrust as a result of Ursery's embezzlement; and (ii) that in facilitating the embezzlement, the plaintiffs engaged in illegal or immoral acts.

Although the plaintiffs fail to identify specifically to whom the allegedly false statements were made, that failure, standing alone, does not warrant a dismissal of their claims at the pleading stage. See *Renton*, supra at 902 (2) (reversing trial court's dismissal of defamation claim where plaintiff asserted defendant had falsely accused plaintiff of forgery and communicated those accusations "'to third parties without privilege'"; although the allegations were "broad and conclusory, . . . that is not fatal to a plaintiff's claim at the motion-to-dismiss stage") (citation and punctuation omitted). Additionally, because plaintiffs have alleged defamatory statements that both imputed to them a crime punishable by law and made charges against them in reference to their trade or profession, damage is presumed and they were not required to plead special damages. See *Walker v. Walker*, 293 Ga. App. 872, 876 (2) (e) (668 SE2d 330) (2008); OCGA § 51-5-4. Nevertheless, we must conclude that to provide Wylie with the notice he needs to defend against the defamation claim, some more specific facts are required. Specifically, the plaintiffs must amend their complaint to

include facts sufficient to provide Wylie with notice of both the content of the allegedly defamatory statements and the context in which those statements were made.[8] See *Benedict v. State Farm Bank, FSB*, 309 Ga.App. 133, 134 (709 SE2d 314) (2011) (a complaint must contain "enough detail to afford the defendant . . . a fair opportunity to frame a responsive pleading") (citations omitted). Accordingly, we vacate the trial court's order denying Wylie's motion to dismiss the defamation claim for insufficient pleadings and remand this case with direction. On remand, the trial court shall order the plaintiffs to amend the complaint to include facts sufficient to show the content and context of any allegedly defamatory statements made by Wylie.

*Case No. A13A0133*

4. SunTrust also appeals from the denial of its motion to dismiss the complaint based on the sufficiency of the pleadings or, in the alternative, for a more definite

---

[8] It may be that the plaintiffs are attempting to assert that Wylie communicated to other members of SunTrust management that the plaintiffs were not authorized to cash the checks presented by Ursery without requiring proper identification and that they independently made the decision to violate bank policy in this regard. It also may be that the plaintiffs are attempting to claim that Wylie and SunTrust repeated these allegedly false statements to the plaintiffs' fellow employees at the bank, as well as to third parties outside of the bank, including Clayton Homes, bank regulators, the DOJ, and/or SunTrust's insurer. Given the vague language of the amended of the amended complaint, however, we cannot be certain exactly what facts the plaintiffs are alleging in support of their defamation claim, and it is not fair to require Wylie to defend based on broad allegations that lack specificity. See *Bush*, supra, 313 Ga. App. at 91.

19

statement. Again, in light of our holdings in Divisions 1 and 2, we address only whether the court below erred in denying this motion with respect to the plaintiffs' defamation claim.

Plaintiffs make the exact same allegations with respect to their defamation claim against SunTrust as they made with respect to the defamation claim asserted against Wylie. For the reasons set forth in Division 3, therefore, we vacate the trial court's order denying SunTrust's motion to dismiss the defamation claim for insufficient pleadings and remand this case with direction. On remand, the trial court shall order the plaintiffs to amend the complaint to include facts sufficient to show the content and context of any allegedly defamatory statements made by SunTrust and/or its agents.

For the reasons set forth above, the orders entered in Case No. A13A0132 and Case No A13A0133 denying Wylie's and SunTrust's joint motion to dismiss the plaintiffs' RICO and common law fraud claims are reversed. The order entered in Case No. A13A0132 denying Wylie's motion to dismiss the plaintiffs' defamation claim is vacated and remanded with direction. The order entered in case No. A13A0133 denying SunTrust's motion to dismiss the plaintiffs' defamation claim or,

in the alternative, for a more definitive statement, is also vacated and remanded with direction.

*Judgment reversed in part and vacated, and case remanded in part in Case No. A13A0132. Judgment reversed in part and vacated, and case remanded in part in Case No. A13A0133. Ellington, P. J., concurs. Phipps, C. J., concurs in judgment only.*