**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2025**

# In the Court of Appeals of Georgia

A25A1145. WOMMACK et al. v. G. S. CONSTRUCTION, INC. et al.

FULLER, Senior Judge.

Plaintiffs Steven Wommack and Amy Weaver appeal from the trial court's order dismissing their civil action against defendants G. S. Construction, Inc. and Alessandro Salvo under Georgia's Racketeer Influenced and Corrupt Organizations (RICO) Act.[1] Because the allegations in the plaintiffs' amended complaint are sufficient to withstand a motion to dismiss, we reverse.

On appeal, this Court reviews de novo a trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted and the challenged

---

[1] Oral argument was held on June 3, 2025, and is archived on the Court's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A25A1145 (June 3, 2025), available at https://vimeo.com/1091253031.

pleading—here, the amended complaint—is construed in favor of the party who filed it. See *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012).

According to the amended complaint, the defendants hired Weaver to serve as the first human resources director for G. S. Construction in March 2023. Almost immediately, Weaver noticed that a large number of G. S. Construction's employees had not been and could not be established as lawfully present and entitled to work in the United States, in violation of G. S. Construction's various government contracts. Weaver discovered documents, such as fake social security cards, handwritten social security numbers, and fake permanent resident cards, that indicated the defendants were assisting these employees in committing identity fraud. Weaver explained to Salvo that she could not maintain those documents, and if they ran payroll that included persons not lawfully entitled to work in the United States, she would report it to the United States Department of Homeland Security. Salvo told her to leave the files in his office and he would "take care of it." Weaver reiterated that any employees not authorized to work in the United States needed to be terminated, United States Immigration and Customs Enforcement (ICE) needed to be notified and, if those employees were still on the next payroll, she would have to report their "unlawful

2

employment and [d]efendants' efforts to conceal that unlawful employment to law enforcement" as she was unwilling to lie in court or go to jail. The following week, Weaver was terminated.

Less than one month later, the defendants hired Wommack to serve as the second human resources director. In reviewing a list of the defendants' employees and purported subcontractors, Wommack noticed irregular paperwork for numerous workers, as well as employees who were using names and identities that were not their own. Within a few days, Wommack met with Salvo to discuss these issues, and Salvo instructed Wommack to "find a way" to keep the employees who were not legally authorized to work in the United States. For a few months, Wommack attempted to regularize the immigration status of some of G. S. Construction's employees by contacting attorneys and identifying immigration resources. In August 2023, Wommack informed Salvo that G. S. Construction needed to inform the employees who were not authorized to work in the United States that they had until October 1 to provide their work authorization credentials or they would be terminated; Wommack also stated that if the defendants did not terminate the employees or bring their status into compliance, he would have to report the matter to ICE.

3

Additionally, Wommack discovered that G. S. Construction had provided fraudulent drug screens to assist an employee in a child custody matter. Wommack informed Salvo that G. S. Construction would need to contact the court to report that the court may have been given false or fraudulent documents. He further explained to Salvo that it was illegal to assist in creating false evidence, and Wommack would have to notify the court. Wommack was terminated a few days later.

Following their terminations, the plaintiffs filed a civil RICO complaint under state law against the defendants.[2] The defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. Following a hearing, the trial court granted the motion to dismiss as to the plaintiffs' amended complaint. This appeal follows.

In several related claims of error, the plaintiffs contend the trial court erred in granting the defendants' motion to dismiss. We agree.

A motion to dismiss pursuant to OCGA § 9-11-12 (b) (6) should be granted only where

---

[2] The initial complaint also listed Pink Ladies Traffic Control, LLC, a company registered to Salvo's wife, as an additional defendant. However, the plaintiffs later dismissed their claims against Pink Ladies Traffic Control.

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Northway*, 291 Ga. at 229 (citation modified). "The main consideration of such a motion to dismiss is whether, under the assumed set of facts, a right to some form of legal relief would exist." Id. (citation modified). On a motion to dismiss for failure to state a claim upon which relief can be granted, the issue is not whether the petition sets forth a claim "in an ideal manner," but whether it sufficiently gives the defendant "fair notice of the claim and a general indication of the type of litigation involved." *Lathem v. Hestley*, 270 Ga. 849, 850 (514 SE2d 440) (1999).

> Turning to Georgia's RICO statute, it provides:

> (a) It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

> (b) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

(c) It shall be unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section. . . .

OCGA § 16-14-4. "Racketeering activity" is the commission of, the attempt to commit, or the solicitation, coercing, or intimidating of another to commit "any crime which is chargeable by indictment" under one of forty-three categories of offenses under Georgia law. OCGA § 16-14-3(5)(A)(i)-(xliii).[3] In addition to the crimes prohibited under Georgia law, "racketeering activity" also means any conduct defined as such under 18 USC § 1961(1), the federal RICO statute; any violation of 18 USC § 1028, which prohibits identity fraud; any violations of 31 USC §§ 5311-5330, which prohibit money laundering and tax evasion; as well as "any act or threat involving" any of several enumerated offenses, including obstruction of justice, "chargeable under the laws of the United States, any territory of the United States, or any state and which is punishable by imprisonment for more than one year." OCGA § 16-14-3(5)(B), (C).

"The Georgia RICO Act was enacted by the Georgia legislature to impose criminal penalties against those engaged in an interrelated pattern of criminal activity

---

[3] The qualifying offenses are also known as "predicate offenses." *Dorsey v. State*, 279 Ga. 534, 539 (2) (615 SE2d 512) (2005).

6

motivated by or the effect of which is pecuniary gain or economic or physical threat or injury, and civil remedies to compensate those injured by reason of such acts." *Najarian Capital, LLC v. Clark*, 357 Ga. App. 685, 693 (4) (849 SE2d 262) (2020) (citation modified). Accord OCGA § 16-14-2(b) (codifying legislative intent). See also OCGA §§ 16-14-5 (providing criminal penalties); 16-14-6 (providing civil remedies). Importantly, Georgia's RICO law "shall be liberally construed to effectuate the remedial purposes embodied in its operative provisions." OCGA § 16-14-2(b). Accord *Williams Gen. Corp. v. Stone*, 280 Ga. 631, 632 (1) (632 SE2d 376) (2006).

"To establish a valid civil RICO claim, a plaintiff must show that the defendant violated or conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury to the plaintiff." *Hansford v. Veal*, 369 Ga. App. 641, 648 (1) (b) (894 SE2d 215) (2023) (citation modified); OCGA § 16-14-6(c) ("Any person who is injured by reason of any violation of [OCGA §] 16-14-4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages."). The plaintiff in a civil RICO action must show that his injury "flowed directly from at least one of the predicate acts. This burden is not met where a plaintiff shows merely that his injury was an eventual consequence of the predicate act or that

he would not have been injured but for the predicate act." *Hansford*, 369 Ga. App. at 648 (1) (b) (citation modified). Accord *Kearney v. Oppenheimer & Co.*, 375 Ga. App. 254, 261 (1) (915 SE2d 709) (2025). Stated another way, the plaintiff must show that at least one predicate offense was directed at him or her. *Nicholson v. Windham*, 257 Ga. App. 429, 431 (571 SE2d 466) (2002). See *Kearney*, 375 Ga. App. at 261 (1) ("The plaintiff must show, then, that his or her injury was the direct result of a predicate act targeted toward her, such that she was the intended victim." (citation modified)).

As relevant to this case, one of the criminal acts prohibited by Georgia law that constitutes racketeering activity is influencing a witness in violation of OCGA § 16-10-93. See OCGA § 16-14-3(5)(A)(xxvii). OCGA § 16-10-93 prohibits not only threats of injury or damage made against a witness "with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court," but also using intimidation or threats; persuading "another person by means of corruption" or attempting to do so; or engaging "in misleading conduct toward another person with intent to" influence, delay, or prevent that person's testimony or hinder, delay or prevent communication with law enforcement.[4] Georgia law, specifically OCGA § 16-

---

[4] OCGA § 16-10-93 (a)-(b)(1) provides: "(a) A person who, with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any

8

10-32(b), also criminalizes threats to prevent information on criminal activity from being communicated to law enforcement,[5] and threatening witnesses in violation of

court, in any administrative proceeding, or before a grand jury, communicates, directly or indirectly, to such witness any threat of injury or damage to the person, property, or employment of the witness or to the person, property, or employment of any relative or associate of the witness or who offers or delivers any benefit, reward, or consideration to such witness or to a relative or associate of the witness shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years. (b)(1) It shall be unlawful for any person knowingly to use intimidation, physical force, or threats; to persuade another person by means of corruption or to attempt to do so; or to engage in misleading conduct toward another person with intent to: (A) Influence, delay, or prevent the testimony of any person in an official proceeding; (B) Cause or induce any person to: (i) Withhold testimony or a record, document, or other object from an official proceeding; (ii) Alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (iii) Evade legal process summoning that person to appear as a witness or to produce a record, document, or other object in an official proceeding; or (iv) Be absent from an official proceeding to which such person has been summoned by legal process; or (C) Hinder, delay, or prevent the communication to a law enforcement officer, prosecuting attorney, or judge of this state of information relating to the commission or possible commission of a criminal offense or a violation of conditions of probation, parole, or release pending judicial proceedings."

[5] OCGA § 16-10-32(b) provides "Any person who threatens or causes physical or economic harm to another person or a member of such person's family or household, threatens to damage or damages the property of another person or a member of such person's family or household, or attempts to cause physical or economic harm to another person or a member of such person's family or household with the intent to hinder, delay, prevent, or dissuade any person from: (1) Attending or testifying in an official proceeding; (2) Reporting in good faith to a law enforcement officer, prosecuting attorney, or judge of a court of this state, or its political subdivisions or authorities, the commission or possible commission of an offense

9

OCGA § 16-10-32 constitutes racketeering activity under the Georgia RICO statute. OCGA § 16-14-3(5)(A)(xxiv).

In light of the general principles set forth above, the specific question for this Court in this case is whether the allegations in the amended complaint "disclose with certainty" that the plaintiffs "would not be entitled to relief under any state of provable facts asserted in support thereof" and whether the defendants have established that the plaintiffs "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Northway*, 291 Ga. at 229 (citation modified). That is, could the plaintiffs possibly introduce evidence within the framework of the amended complaint that their injuries flowed directly from acts in violation of OCGA § 16-10-93(b) or OCGA § 16-10-32(b) which were directed at them?

The amended complaint alleged, inter alia, that the defendants' conduct in soliciting Weaver to cooperate with their illegal scheme and her subsequent

---

under the laws of this state or a violation of conditions of probation, parole, or release pending judicial proceedings; (3) Arresting or seeking the arrest of another person in connection with a criminal offense; or (4) Causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding shall be guilty of a felony[.]"

termination when she failed to do so constituted acts or threats of influencing a witness under OCGA § 16-10-93(b). It further alleged an act of economic harm under OCGA § 16-10-32(b) in that the termination caused economic harm to Weaver with an intent to hinder, delay, prevent, or dissuade her from reporting the defendants' employment of unauthorized workers to law enforcement or the defendants' violation of government contracts. Similarly, the amended complaint alleged that the defendants solicited Wommack to engage in racketeering activity and that their termination of him caused him economic harm with an intent to hinder, delay, prevent, or dissuade him from reporting the defendants' employment of unauthorized workers to law enforcement or its submission of false evidence in a court proceeding.[6] Both plaintiffs asserted not only that they suffered financial injury, including loss of wages, but also mental and emotional distress, and damage to their reputations. In light of the foregoing, we find that within the framework of the complaint, the plaintiffs could show that the defendants' conduct constituted implicit threats, persuasion by means of corruption, misleading conduct, or threats of economic harm

---

[6] The amended complaint also alleged that the terminations of Weaver and Wommack constituted violations of the federal statutes prohibiting obstruction of justice.

11

made with an intent to hinder, delay, or prevent them from contacting law enforcement or ultimately testifying against defendants. See OCGA §§ 16-10-32(b); 16-10-93(b). Cf. *Shelnutt v. State*, 289 Ga. App. 528, 532-34 (3) (5) (657 SE2d 611) (2008) (affirming convictions for threatening a witness in violation of OCGA § 16-10-32(b)(1) when defendant caused economic harm by damaging witness's husband's car and influencing a witness in violation of OCGA § 16-10-93(b)(1)(A) when defendant demanded witness not testify and threatened to evict witness). See generally *Johnson v. State*, 277 Ga. App. 499, 506 (2) (627 SE2d 116) (2006) (explaining "that the defendant's words or conduct communicated an indirect threat . . . may be inferred from . . . circumstances that cast what otherwise could be perceived as innocuous conduct in a different, sinister light").

In granting the defendants' motion to dismiss, the trial court noted that Georgia courts, as well as the Supreme Court of the United States, have concluded that a terminated employee "cannot turn his or her termination into a RICO lawsuit." But we find that the cases relied on by the trial court are distinguishable,[7] and given the

[7] The trial court also relied on an unpublished decision of the Fulton County Superior Court in reaching its conclusion. See *Whitley v. The Coca-Cola Co.*, No. 2003CV69965 (Fulton County Super. Ct. Sept. 4, 2003) (2003 WL 25552941). Of course, this Court is not bound to follow trial court decisions. Cf. Ga. Const. of 1983,

12

specific allegations in the amended complaint, the trial court's statement may be overbroad.

In *Beck v. Prupis*, 529 US 494 (120 SCt 1608, 146 LE2d 561) (2000), the Supreme Court concluded that a person may not bring a federal civil RICO suit "for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the [federal RICO] statute."[8] Id. at 507 (III). There, the plaintiff-employee contacted regulators regarding financial improprieties by his employer and he was

Art. VI, Sec. V, Par. III ("The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents."). Similarly, we are unpersuaded by the defendants' citation to *Huffman v. Davey Tree Expert Co.*, No. 4:18-CV-184 (SD Ga. Mar. 3, 2025) (2025 WL 675458), in which the District Court dismissed a plaintiff's civil RICO claims under Georgia law because the plaintiff's "alleged predicate acts . . . are essentially allegations of employment retaliation, and the Eleventh Circuit Court of Appeals routinely dismisses civil RICO claims where the plaintiff's purported injury is employment-related retaliation for reporting alleged racketeering activity"). Simply put, "we are not bound by the reasoning or holding of a federal district court's decision." *Green Meadows Housing Partners, LP v. Macon-Bibb County*, 372 Ga. App. 724, 735 (4) (906 SE2d 430) (2024) (quotation marks omitted).

[8] The Georgia RICO Act was modeled after the federal RICO statute, and for this reason, Georgia courts have found federal authority persuasive in interpreting the Georgia RICO statute. *Hansford*, 369 Ga. App. at 650 (1) (b). But see id. ("[T]he Georgia RICO statute is considerably broader than the federal RICO statute and federal circuit court opinions regarding the federal statute, while instructive, do not control our construction or application of the Georgia RICO statute." (citation modified)).

terminated. Id. at 498 (I) (B). On summary judgment, the district court found that "employees who are terminated for refusing to participate in RICO activities, or who threaten to report RICO activities, do not have standing to sue under [federal] RICO for damages from their loss of employment" because the termination was not itself an act of racketeering. Id. at 499 (I) (B); see 18 USC § 1961(1) (defining "racketeering activity" for purposes of the federal RICO statute). But given the particular allegations in the amended complaint set forth above and Georgia's broad criminal prohibitions against influencing witnesses, we find that *Beck*, which held that the plaintiff-employee's termination *in that case* did not constitute an act of racketeering under 18 USC § 1961(1), does not mandate dismissal of the plaintiffs' civil RICO complaint under Georgia law. See generally *First Union Nat'l Bank of Ga. v. J. Reisbaum Co.*, 190 Ga. App. 234, 236 (378 SE2d 317) (1989) (explaining that while we are bound by the United States Supreme Court's interpretation of federal law, we follow decisions of the Supreme Court of Georgia with respect to state law).

Turning to the Georgia cases cited by the trial court, it relied on both *Wylie v. Denton*, 323 Ga. App. 161 (746 SE2d 689) (2013) (physical precedent only), and *Nicholson*, 257 Ga. App. 429. In *Wylie*, the plaintiff-employees were bank tellers who

were directed to "forget banking practices and laws as they understood them" and cash certain checks. *Wylie*, 323 Ga. App. at 163. Following an internal investigation, the tellers were terminated, and they filed suit. Id. at 163-64. This Court explained:

> As best we can tell from their amended complaint, the plaintiffs are alleging the existence of two separate but related schemes. The first was a scheme to defraud (or conspiring to defraud) [a bank customer]; the second scheme was to cover up the first scheme, by misleading or defrauding (or conspiring to mislead or defraud) federal bank regulators and/or the DOJ. The predicate acts alleged in furtherance of the first scheme are forgery, theft, money laundering, financial institution fraud, and engaging in a monetary transaction with property derived from an unlawful activity. The predicate acts allegedly committed in furtherance of the second scheme are mail and wire fraud, based on the fact that the false statements made to the bank regulators and/or the DOJ were transmitted by mail and electronic means.

Id. at 165 (1) (footnote omitted). This Court determined that the plaintiffs' allegations of predicate acts directed at the bank's customer and federal regulators did not state a claim for a direct injury against the plaintiffs. Id. at 168 (1). Similarly, in *Nicholson*, this Court affirmed the dismissal of the plaintiff-employee's civil RICO suit when she alleged predicate acts of "theft, tampering with evidence, obstruction of justice, mail fraud, and wire fraud" against her employer because "none of these acts was

directed" at the plaintiff. *Nicholson*, 257 Ga. App. at 431 (1). Specifically, we found that Nicholson's termination "stemmed from her refusal to participate" in the defendants' illegal scheme, rather than the defendants' solicitation of her, such that the "the harm [was] indirect rather than direct." Id. at 431 (1).

Conversely, in the instant case, the plaintiffs alleged that they were harmed by acts of racketeering in furtherance of the defendants' scheme to profit from the employment of persons not authorized to work in the United States and that the defendants' threats and acts against them were intended to prevent or dissuade them from reporting defendants' illegal acts to law enforcement. They alleged not only financial harm as a result of the defendants' conduct, but also mental and emotional distress and damage to their reputations.[9] In contrast to the allegations set forth in *Wylie* and *Nicholson*, the plaintiffs here have alleged specific acts of racketeering directed against them. This distinction is crucial because the previous cases involved predicate acts directed at third parties, making the employees' injuries an "eventual consequence," rather than a direct flow from the defendants' predicate acts.

---

[9] Thus, even if, under *Nicholson*, 257 Ga. App. at 431 (1), termination is considered an indirect harm, rather than a direct harm, the plaintiffs here also alleged other direct harms as a result of the defendants' predicate acts directed against them.

*Hansford*, 369 Ga. App. at 648 (1) (b). Compare *O'Neal v. Garrison*, 263 F3d 1317, 1323 (11th Cir. 2001) (reversing district court's grant of summary judgment to defendants in Georgia civil RICO suit when plaintiff-employee alleged obstruction of justice as predicate act, including termination of plaintiff and another employee to deter them from "freely giving truthful testimony . . . or to injure them because they did so testify" in criminal prosecution against the defendants),[10] with *O'Malley v. O'Neill*, 887 F2d 1557, 1561 (II) (11th Cir. 1989) (affirming district court's dismissal of federal civil RICO claim when only predicate act alleged was mail fraud and plaintiffs did not show that mail fraud "directly caused them to lose their jobs"); *Morast v. Lance*, 807 F2d 926, 932–33 (II) (A) (6) & (B) (1) (11th Cir. 1987), overruled

---

[10] The trial court distinguished *O'Neal* on the basis that the plaintiff in that case had testified in an ongoing criminal investigation. But both OCGA § 16-10-32 and OCGA § 16-10-93 criminalize not only direct threats to witnesses made during ongoing investigations, e.g., OCGA §§ 16-10-32(b)(1); 16-10-93(a), but also threats or persuasion intended to delay or prevent testimony or communication with law enforcement, e.g., OCGA §§ 16-10-32(b)(2); 16-10-93(b). But see *Scouten v. Amerisave Mtg. Corp.*, 284 Ga. App. 242, 243 (1) (643 SE2d 759) (2007), reversed on other grounds, 283 Ga. 72 (656 SE2d 820) (2008), and vacated in part, 291 Ga. App. 493 (662 SE2d 741) (2008) (explaining that without "a specific allegation" that defendant-employer threatened plaintiff-employee "with the economic harm of termination" to induce him to sign a false statement, employee's RICO suit based on witness tampering claim failed since employee was not fired as a result of employer's fraudulent practices, but because he refused to participate in them).

in part on other grounds by *Haddle v. Garrison*, 525 US 121 (119 SCt 489, 142 LE2d 502) (1998) (holding that plaintiff-bank employee's claims of federal and Georgia RICO violations failed when employee alleged that he was fired in retaliation for reporting irregular banking transactions and cooperating with subsequent investigation because, as employee was not fired for refusing to participate in illegal scheme, his termination did not flow directly from any predicate acts). Although the defendants contest the plaintiffs' allegations, whether these allegations can be proved remains to be determined. At this stage, because the plaintiffs have alleged that the defendants' acts or threats were intended to deter them from reporting the defendants' criminal activity or later testifying, in violation of OCGA § 16-10-32(b) or OCGA § 16-10-93(b), the plaintiffs have each alleged that the defendants directed a predicate offense at them and that they suffered direct harm as a result—which is sufficient to withstand a motion to dismiss. See OCGA § 16-14-6(c) ("Any person who is injured by reason of any violation of [Georgia's RICO statute] shall have a cause of action. . . .").

*Judgment reversed. Dillard, P. J., and Mercier, J., concur.*