**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2014**

# In the Court of Appeals of Georgia

A14A0603. JANE DOE v. ARCHDIOCESE OF ATLANTA et al.

DILLARD, Judge.

Jane Doe appeals from the trial court's dismissal of her lawsuit against the Archdiocese of Atlanta and Holy Cross Catholic Church (collectively, "the Church"), on the ground that the suit, filed using a pseudonym, was a legal nullity. Because we hold that the trial court erred in concluding that the complaint was void, we reverse. We further hold that the trial court has the discretion to consider whether Doe is entitled to proceed under a pseudonym and, therefore, remand the case for consideration of that issue in a manner consistent with this opinion.

The undisputed facts are as follows. On September 4, 2012, Doe filed a complaint against the Church using the pseudonym "Jane Doe" and alleged that she, now the age of majority, had been the victim of childhood sexual abuse from a former

Church employee. Three days later, Doe's counsel sent the Church a copy of the complaint with a letter revealing Doe's identity and explaining that, "given the sensitive nature of the allegations," the complaint had been filed under a pseudonym in order "to protect the identity and avoid future injury to [Doe]" and asking the Church to advise if it objected to her doing so.[1] And then on September 14, 2012, Doe filed a "notice of disclosure of identity of plaintiff Jane Doe," in which she identified herself under seal to the trial court. Each of the foregoing actions transpired *prior to* the expiration of the statute of limitations on Doe's claims.[2]

The Church answered and filed a motion to dismiss, asserting that Doe's complaint was a procedural nullity because it had not been filed in the name of a real person and that, as the statute of limitations had since expired, she could not amend her complaint so as to relate back to the originally filed pleading. The trial court agreed and dismissed Doe's lawsuit with prejudice. This appeal follows.

---

[1] Counsel for the Church advised Doe's counsel that it would not consent to Doe proceeding with her complaint using a pseudonym.

[2] *See* OCGA § 9-3-33.1 (b) ("Any civil action for recovery of damages suffered as a result of childhood sexual abuse shall be commenced within five years of the date the plaintiff attains the age of majority.").

We begin by noting that this case involves two independent issues for our consideration. The first is whether Doe's filing of a lawsuit using a pseudonym rendered it a nullity, such that Doe is now barred—due to the expiration of the statute of limitations—from amending the complaint or otherwise litigating her claims against the Church. If not, the second question is whether Doe must amend her complaint so as to reveal her identity, or whether she may proceed with the lawsuit using a fictitious name. For the reasons set forth *infra*, we answer the first question in the negative and remand this case to the trial court for it to exercise its discretion in determining the second issue.

1. In general, Georgia law mandates that parties to a lawsuit identify themselves in their respective pleadings[3] and that every action be prosecuted in the name of the real party in interest.[4] And prior to the passage of the Civil Practice Act, the Supreme Court of Georgia, in *W. & A.R. Co. v. Dalton Marble Works,*[5] held that if a lawsuit is "brought in a name which is neither that of a natural person, a

_____

[3] *See* OCGA § 9-11-10 (a) (requiring a complaint to "include the names of all the parties . . .").

[4] *See* OCGA § 9-11-17 (a) ("Every action shall be prosecuted in the name of the real party in interest.").

[5] 122 Ga. 774 (50 SE 978) (1905).

corporation, nor a partnership, it is a mere nullity"[6] and, as such, cannot be amended by inserting the name of the proper party in interest, "there being nothing to amend by."[7] It is this language that both the Church and trial court contend renders Doe's complaint a nullity.[8]

When passing the Civil Practice Act in 1966,[9] however, the General Assembly expressly provided that

> [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.[10]

---

[6] *Id*. at 775.

[7] *Id*.

[8] *See also Russell v. O'Donnell*, 132 Ga. App. 294, 295 (2) (208 SE2d 107) (1974) (opinion relied upon by the trial court in its order), *abrogation by statute recognized* in *Community Magazine, LLC v. Color Xpress*, ___ Ga. App. ___ (756 SE2d 564, 568) (2014).

[9] *See* OCGA § 9-11-1 *et seq*.

[10] OCGA § 9-11-17 (a).

4

Furthermore, the General Assembly included an explicit mandate that parties be freely permitted to amend pleadings[11] and that "[a]ll pleadings . . . be so construed as to do substantial justice."[12]

After the enactment of the Civil Practice Act, our Supreme Court reexamined the issue presented in *Dalton Marble Works*[13] in order to consider whether under that Act "pleadings may be amended to substitute a named party plaintiff when suit is filed in the name of a party which is not a legal entity."[14] The Court concluded that, contrary to the preexisting law, when "the party plaintiff named in a complaint is not a legal entity but is reasonably recognizable as a misnomer for a legal entity which is the real party plaintiff, the misnomer may be corrected by amendment."[15] In so doing, the Court recognized the forgiving policies contained in the Civil Practice Act, explaining that "pleadings are not an end in themselves but only a method to assist

---

[11] *See* OCGA § 9-11-15 (a) ("A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires.").

[12] OCGA § 9-11-8 (f).

[13] 122 Ga. 774 (50 SE 978) (1905).

[14] *Block v. Voyager Life Ins. Co.*, 251 Ga. 162, 163 (1) (303 SE2d 742) (1983).

[15] *Id.*

5

in *reaching the merits of the case*."[16] And since that time, Georgia's appellate courts have readily permitted amendment of complaints to substitute proper party plaintiffs in the absence of a showing of harm to the defendants.[17]

Given the foregoing analytical framework, we conclude that the trial court erred in holding that Doe's complaint was a nullity due to her use of a pseudonym. Significantly, Doe revealed her identity to both the trial court and the Church prior

---

[16] *Id*. (emphasis supplied).

[17] *See Franklyn Gesner Fine Paintings, Inc. v. Ketcham*, 252 Ga. 537, 538 (314 SE2d 903) (1984) (disapproving of this Court's "overly restrictive construction" of OCGA § 9-11-17 (a) and allowing substitution of the corporation—the real party in interest—for the individual by whom the corporation was closely held because there was "no injustice in permitting the amendment"); *Color Xpress*, 326 Ga. App. at 335 (3) (permitting substitution in lawsuit filed using a trade name while recognizing that, in *Block*, the Supreme Court "implicitly disapprov[ed]" that such suits were "mere nullities"); *Memar v. Styblo*, 293 Ga. App. 528, 531 (667 SE2d 388) (2008) (allowing amendment to substitute the administrator of the estate as the proper party plaintiff after the expiration of the repose period in a medical-malpractice action originally filed in the name of the estate, a non-legal entity); *Rooks v. Tenet Healthsystem GB, Inc*., 292 Ga. App. 477, 479 (1) (a) (664 SE2d 861) (2008) (reversing trial court's dismissal of wrongful-death action and remanding case to substitute real party in interest when originally-named plaintiff lacked capacity to bring suit); *see also Comm. for Better Gov't v. Black*, 216 Ga. App. 173, 174 (1) (453 SE2d 772) (1995); *U.S. Xpress, Inc. v. W. Timothy Askew & Co.*, 194 Ga. App. 730, 731 (391 SE2d 707) (1990).

to the expiration of the statute of limitations.[18] And for this reason, we reject the Church's overly rigid argument that, because Doe was not *publicly* identified, her complaint failed to import a natural person and should be treated as a nullity (*i.e.*, as though Doe did not exist).[19] Doe is indeed a natural person; it is only her name that is (at least temporarily) being shielded from public disclosure. But neither the trial court nor the Church were left wondering as to who was asserting these claims, nor was either misled or deceived in any way. Under these circumstances, there is no injustice in allowing Doe's lawsuit to remain pending and, to the extent that the trial

---

[18] We leave for another day the question of whether the failure to disclose the identity of a pseudonym to the trial court and/or opposing party prior to the expiration of a statute of limitations would require a different result.

[19] In a nutshell, the Church is arguing that it is *never* permissible to file a lawsuit in Georgia using a pseudonym. But if a complaint brought by someone using a pseudonym is a nullity, and thus is void from the very moment it is filed, then any party who seeks to shield his or her identity from the public has no means by which to do so. *But see Qualls v. Rumsfeld*, 228 FRD 8, 10 (D.D.C. 2005) (noting that although the court "has not tackled the propriety of pseudonymous litigation head on, . . . [it] has developed an ad-hoc process that accommodates the practice [by allowing a] litigant seeking to proceed under pseudonym [to] ask the Chief Judge, ex parte, for leave to file a complaint omitting the litigant's real name and full address."). And if a party is unable to invoke the jurisdiction of a court without first revealing his or her name, then pseudonymous lawsuits are a dead letter in our state. Suffice it to say, such a rule would place Georgia far outside the mainstream of American jurisprudence, and we decline to adopt it.

7

court deems it necessary to do so (see discussion *infra*), in permitting her to amend the complaint.[20]

_____

[20] It is worth noting that there are numerous published opinions of this Court and the Supreme Court of Georgia involving lawsuits brought by a plaintiff using a pseudonym. *See, e.g., Doe v. Prudential-Bache/A.G. Spanos Realty Partners, L.P.* , 268 Ga. 604, 604 (492 SE2d 865) (1997) (lawsuit involving claims brought by a Jane Doe against the owners and operators of the apartment complex in which she lived after she was raped and robbed when parking her car underneath the apartment building); *In re Doe*, 262 Ga. 389, 389 (418 SE2d 3) (1992) (a declaratory-judgment action involving "several difficult issues relating to medical decision-making for a terminally ill child[,] Jane Doe . . . ."); *Doe I v. Young Women's Christian Ass'n of Greater Atlanta, Inc.*, 321 Ga. App. 403, 404 n.1 (740 SE2d 453) (2013) ("The appellants are using pseudonyms in this action pursuant to a protective order entered by the trial court."); *Doe v. Andujar*, 297 Ga. App. 696, 696 n.1 (678 SE2d 163) (2009) ("The appellants are using pseudonyms in this action pursuant to a protective order entered by the trial court."); *Metropolitan Atlanta Rapid Transit Auth. v. Doe*, 292 Ga. App. 532, 533 n.1 (664 SE2d 893) (2008) ("The plaintiff's actual name was not used so as to protect her privacy."); *Doe v. HGI Realty, Inc.*, 254 Ga. App. 181, 181 (561 SE2d 450) (2002) (lawsuit brought by a Jane Doe "for damages after she was robbed and sexually assaulted while working in a store . . . ."); *Post Properties, Inc. v. Doe*, 230 Ga. App. 34, 34 (495 SE2d 573) (1997) (lawsuit brought by a Jane Doe against the owner and operator of the apartment complex where she lived after she was raped inside her apartment.); *Doe v. Briargate Apartments, Inc.*, 227 Ga. App. 408, 408 (489 SE2d 170) (1997) (same)*; Doe v. Bd. of Regents of Univ. Sys. of Ga.*, 215 Ga. App. 684, 684 (452 SE2d 776) (1994) ("The plaintiff, using the pseudonym Jane Doe, filed a complaint against the Board of Regents of the University System of Georgia seeking a temporary restraining order and preliminary and permanent injunctive relief against disclosure.").

2. The next question is whether Doe must publicly reveal her identity or whether she is permitted instead to prosecute her case using a pseudonym. We leave this inquiry in the first instance to the sound discretion of the trial court.

Georgia law requires that parties disclose their names in judicial pleadings and presumes the public's right to access this information in addition to the entirety of the court records.[21] This is not merely a procedural formality. Indeed, Georgia has long recognized that the right to public access to judicial proceedings "protects litigants both present and future, because justice faces its gravest threat when courts dispense

---

[21] *See* Ga. Unif. Sup. Ct. R. 21 ("All court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth [in Rule 21]."); *In re Gwinnett Cnty. Grand Jury*, 284 Ga. 510, 511 (668 SE2d 682) (2008); *Green v. Drinnon, Inc.*, 262 Ga. 264, 264 (1) (417 SE2d 11) (1992) ("In this state, the public and the press have traditionally enjoyed a right of access to court records." (punctuation omitted)); *see also* Judicial Qualifications Comm'n Op. (Aug. 28, 2013) (noting that "[a]bsent specific legal authority, public access to court proceedings should be unfettered and unobstructed.").

it secretly."[22] Additionally, First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings."[23]

But the presumption of open judicial proceedings is not absolute. Georgia law permits a court to limit or even prohibit public access to its records in exceptional circumstances if it determines "that the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest."[24] And this Court has

[22] *Atlanta Journal v. Long*, 258 Ga. 410, 411 (1) (369 SE2d 755) (1988) *opinion corrected*, 377 SE2d 150 (1989); *see State v. Brown*, 293 Ga. 493, 496 (1) (748 SE2d 376) (2013) (affirming the dismissal of a criminal indictment because it was not returned in a courtroom open to the public); *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576, 576, n.1 (292 SE2d 815) (1982) ("This court has sought to open the doors of Georgia's courtrooms to the public and to attract public interest in all courtroom proceedings because it is believed that open courtrooms are a *sine qua non* of an effective and respected judicial system which, in turn, is one of the principal cornerstones of a free society.").

[23] *Doe v. Stegall*, 653 F2d 180, 185 (IV) (5th Cir. 1981); *accord Doe v. Barrow County*, 219 FRD 189, 191-94 (II), (III) (N.D. Ga. 2003); *see generally Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-76 (III) (A) (100 SCt 2814, 65 LE2d 973) (1980) ("The First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." (punctuation omitted)); *see also id.* at 579 (III) (C), n.17 (recognizing that "[w]hether the public has a right to attend trials of civil cases [was] a question not raised by [*Richard Newspapers, Inc.*], but [noting] that historically both civil and criminal trials have been presumptively open").

[24] Ga. Unif. Super. Ct. R. 21.2; *see* Ga. Unif. Super. Ct. R. 21.1 ("Upon motion by any party to any civil or criminal action, or upon the court's own motion, after

recognized, on at least one occasion, that a trial court may exercise its discretion to allow a party to proceed with a lawsuit under a pseudonym. In *Doe v. Hall*,[25] we held that the trial court retained the discretion to determine whether an HIV-positive plaintiff could use a pseudonym to prosecute a case against his doctor for improperly disclosing confidential medical information.[26]

Likewise, although we are certainly not bound by decisions from other jurisdictions, there is a considerable body of precedent for departing from a

hearing, the court may limit access to court files respecting that action. The order of limitation shall specify the part of the file to which access is limited, the nature and duration of the limitation, and the reason for limitation."); Ct.App. R. 45 (j) ("All pleadings, briefs, orders, transcripts, exhibits and any other written or recorded material that are part of the record [of a Parental Notification Act case] shall be considered and treated by the Court as confidential. Upon conclusion of the appellate proceedings, the record shall be sealed, and the contents of the record shall not be disclosed, except upon order of this Court or the Supreme Court of Georgia."); *Savannah Coll. of Art & Design v. Sch. of Visual Arts, Inc.*, 270 Ga. 791, 793 (515 SE2d 370) (1999) ("[I]n cases of clear necessity, identified as instances where privacy rights are in jeopardy, the right of public access should yield."); *Long*, 258 Ga. at 411 (1) (noting that although the purpose of Rule 21 "is to preserve the traditional right of access" to court records, it "also preserves another traditional right—the right of superior courts in exceptional cases to shield court records from public view"); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (II) (A) (98 SCt 1306, 55 LEd2d 570) (1978) ("It is uncontested . . . that the right to inspect and copy judicial records is not absolute.").

[25] 260 Ga. App. 421 (579 SE2d 838) (2003).

[26] *See id*. at 423.

11

"procedural custom fraught with constitutional overtones to accommodate a plaintiff's asserted need to proceed anonymously through the use of a fictitious name."[27] And numerous courts—both federal and state—have adopted balancing tests designed to weigh the countervailing interests involved when a plaintiff seeks to shield his or her name; and, more specifically, several have determined that claims predicated upon allegations of childhood sexual abuse may invoke a privacy interest

---

[27] *Stegall*, 653 F2d at 185 (IV); *see Doe v. Frank*, 951 F2d 320, 324 (11th Cir.1992) ("A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity."); *see also Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F3d 869, 872 (7th Cir. 1997) (noting that "fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses"); *Stegall*, 653 F2d at 186 (IV) (allowing a mother and her children to proceed under fictitious names in their lawsuit challenging the constitutionality of prayer in public schools due to "the special status and vulnerability of the child-litigants, the showing of possible threatened harm and serious social ostracization based upon militant religious attitudes, and the fundamental privateness of the religious beliefs. . . ."); *Doe v. Barrow County*, 219 FRD 189, 191-94 (II), (III) (N.D. Ga. 2003) (allowing plaintiff to proceed under a pseudonym when challenging the display of the Ten Commandments at the courthouse because, in part, "religion is perhaps the quintessentially private matter"); *see also Roe v. Wade*, 410 U.S. 113, 120 (II) n.4 (93 SCt 705, 35 LE2d 147 (1973).

so great as to warrant the unusual practice of allowing the plaintiff to litigate using

a pseudonym.[28]

_____

[28] *See, e.g.*, *Plaintiff B v. Francis*, 631 F3d 1310, 1317 (III) (11th Cir. 2011) (reversing trial court's denial of two out of four plaintiff's petition to proceed under a pseudonym because "[t]he issues involved . . . could not be of a more sensitive and highly personal nature—they involve descriptions of the [p]laintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors who were coerced by the [d]efendants into those activities")*; Doe v. St. John's Episcopal Parish Day School, Inc.*, Case No. 8:13-cv-2467-T-27EAJ, 2014 WL 585767, at *8 (III) (c) (4) (M.D. Fla., Feb. 12, 2014) ("Plaintiff's allegations of childhood sexual abuse by members of the clergy and employees of the Church, School, and/or Diocese while he was a minor are . . . of a sensitive and highly personal nature . . . and therefore [p]laintiff may proceed anonymously at this time."); *John Doe 140 v. Archdiocese of Portland in Oregon*, 249 FRD 358, 361 (I) (D. Or. 2008) (allowing alleged victim of childhood sexual assault to proceed anonymously in part because "[t]he experience of sexual abuse can be deeply psychologically traumatic, and public knowledge of such abuse can trigger new trauma even years after the fact"); *Doe No. 2 v. Kolko*, 242 FRD 193, 195 (E.D. N.Y. 2006) ("[S]exual assault victims are a paradigmatic example of those entitled to a grant of anonymity."); *Does v. Covington Cnty. Sch. Bd.*, 884 F. Supp. 462, 465 (II) (M.D. Ala. 1995) (granting plaintiffs leave to proceed without disclosing their names while "recognizing the vulnerability and tender age of each plaintiff, as well as the sensitive issues involved in the case"); *Doe v. Brown*, 2009 WL 5322462, at *3 (Conn. Super. Ct. Dec. 11, 2009) (holding "the plaintiff's use of a pseudonym will serve the overriding interest of protecting the plaintiff from exposure in the community of her private situation, which involves her allegations that . . . she was sexually, physically, and emotionally abused. . . ."). *But see Doe v. Wolowitz*, Case No. 01-73907, 2002 WL 1310614 (E.D. Mich. May 28, 2002) (denying plaintiff's motion to use a fictitious name in lawsuit alleging sexual abuse by her psychologist because "[t]his will be a case involving direct and personal attacks upon the reputation and integrity of the defendant and in which personal credibility will play a large role in the issues in the case"); *Doe v. Shakur*, 164 FRD 359, 362 (S.D. N.Y. 1996) (balancing several factors, including that media was already aware of plaintiff's residence and place of employment, before concluding

13

We agree with courts that have concluded that a trial court may, in extraordinary cases, "employ its sound discretion in determining whether or not a pseudonym may be used . . ., considering the effects of such decision on the rights of the individual parties and considering the right of the public to open judicial proceedings."[29] In so doing, the ultimate test is whether the plaintiff has a "substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings."[30] And in making its determination, the trial court can consider many factors, including, but not limited to, the following: (1) whether the lawsuit involves "matters of sensitive and highly personal nature"; (2) whether the plaintiff or an innocent non-party risks suffering physical or psychological harm if the plaintiff is identified, taking into consideration the age of

---

that the "public humiliation and embarrassment" associated with her allegations of sexual assault were insufficient to overcome the presumption of public access to the parties' names in judicial proceedings); *Doe v. Univ. of Rhode Island*, 28 Fed. R. Serv.3d 366 (D. R.I. 1993) (requiring plaintiff to reveal her identity in suit against college alleging that she was sexually assaulted as a result of school's negligence in part because her "claim [did] not involve any admission on her part that she has or will be engaged in any illegal activity, that she has violated the law or that she willingly engages in unaccepted sexual practices").

[29] *Hall*, 260 Ga. App. at 423.

[30] *Frank*, 951 F2d at 323; *see also Barrow County, Ga.*, 219 FRD at 193 (III).

the plaintiff; and (3) whether the plaintiff's anonymity imposes a risk of fundamental unfairness to the opposing party.[31] In considering the foregoing factors,[32] as well as any other relevant considerations, we emphasize that "[e]conomic harm or mere embarrassment are not sufficient to override the strong public interest in disclosure."[33]

And to the extent the trial court determines that anonymity in the case *sub judice* is warranted, the court is free to "fashion its order on the use of a pseudonym,

---

[31] *Francis*, 631 F3d at 1316 (III); *see generally James v. Jacobson*, 6 F3d 233, 238 (III) (4th Cir. 1993) (collecting relevant citations); *Frank*, 951 F2d at 324; *Shakur*, 164 FRD at 361.

[32] Additional factors to consider in other types of cases have included whether the suit challenges a governmental activity, and whether the plaintiff is "compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution." *Stegall*, 653 F2d at 186 (IV); *see also generally Frank*, 951 F2d at 323; *Barrow County, Ga.*, 219 FRD at 193 (III). We note that the cases cited throughout this opinion contemplate varied versions of the factors set forth *supra*. We have attempted to draw from these cases and create a condensed, non-exhaustive list of factors so as to provide guidance to the trial courts, but in so doing, we do not intend to create a rigid, inflexible test for determining the propriety of party anonymity. *See Doe v. Hartz*, 52 FSupp2d 1027, 1046 (II) (A) (3) (a) (N.D. Iowa 1999). We further note that "[t]he mere presence of one factor [is] not meant to be dispositive, but rather, these factors were highlighted merely as factors deserving consideration." *Id.*; *see also Stegall*, 653 F2d at 185 (III).

[33] *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 FRD 418, 420 (II) (D. Mass. 1995); *see also Frank*, 951 F2d at 324 ("[T]he fact that [a plaintiff] may suffer some personal embarrassment, standing alone, does not require the granting of his [or her] request to proceed under a pseudonym.").

as justice may require, and indeed, must ensure that the rights of the parties to full discovery is not interfered with by the use of a pseudonym."[34] The trial court should continuously monitor the proceedings so as to minimize the impact on the defendant's rights and "should permit the use of [the] plaintiff's real name [when] such use is required in order to ensure adequate discovery."[35] Finally, the trial court is free to use other devices, "such as sealing certain records and orders of nondisclosure in conjunction with the plaintiff's use of a pseudonym, in order to balance lawful discovery requirements, while providing all reasonable confidentiality.[36]

In sum, we hold that Doe's complaint filed using a pseudonym is not a legal nullity and reverse the trial court's ruling on that issue. We further remand the case for the trial court's consideration of whether Doe is permitted to proceed under a fictitious name in a manner consistent with this opinion.[37]

---

[34] *Hall*, 260 Ga. App. at 423.

[35] *Id*.

[36] *Id*.

[37] *See Jacobson*, 6 F3d 233, 238 (4th Cir. 1993) ("The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion.").

16

*Judgment reversed and case remanded with direction. Doyle, P. J., and Miller, J., concur.*

17