**THIRD DIVISION
DOYLE, P. J.,
BROWN, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 29, 2023**

# In the Court of Appeals of Georgia

A21A0898. MCARTHUR et al. v. BEECH HAVEN BAPTIST
 CHURCH OF ATHENS et al.

DOYLE, Presiding Judge.

This appeal encompasses two orders dismissing three churches — Green Acres Baptist Church, Beech Haven Baptist Church of Athens, and First Baptist Church of Athens — from lawsuits brought by six plaintiffs alleging sexual abuse. In the plaintiffs' initial appeal ("*McArthur I*"), this Court affirmed the trial court's dismissal of the complaints, holding inter alia that the plaintiffs could not benefit from fraud-based tolling and that the statutes of limitations had expired.[1] The Supreme Court of

---

[1] See *McArthur v. Beech Haven Baptist Church of Athens*, 361 Ga. App. 877, 879-880 (2) (864 SE2d 189) (2021).

Georgia vacated and remanded, holding that we should reconsider our decision in light of the recently-issued *Doe v. St. Joseph's Catholic Church*.[2]

Based on *St. Joseph's* and for the reasons set forth below, we: affirm the trial court's dismissal of the RICO (Racketeer Influenced and Corrupt Organizations),[3] respondeat superior, and public nuisance claims; reverse the trial court's dismissal of the fraudulent misrepresentation, fraudulent concealment, failure to provide adequate security, failure to train, supervise, and monitor, failure to warn, and negligent retention claims, as well as the derivative attorney fee and punitive damages claims; and vacate the trial court's dismissal of the Doe complaints, and remand for reconsideration of the issue in accordance with this opinion.

Viewing all well-pled allegations in the complaint as true,[4] the record shows the following. Ernest Boland was a scoutmaster at the three Athens-based churches from 1950 until 1977. The complaints alleged that Boland abused William Doe while he was a member of a boy scout troop at First Baptist in the 1950s; Dennis Doe and

---

[2] 313 Ga. 558 (870 SE2d 365) (2022).

[3] See OCGA § 16-14-1 et seq.

[4] See *Hobbs v. Great Expressions Dental Centers of Ga.*, 337 Ga. App. 248 (786 SE2d 897) (2016).

Tim Doe while they were members of a boy scout troop at Green Acres Baptist in the 1960s and 1970s; and Robert Doe, John Doe, and Alan McArthur while they were members of a boy scout troop at Beech Haven Baptist in the 1970s. The last alleged abuse by the plaintiffs took place in 1981. Robert Doe additionally alleged that an assistant scoutmaster to Boland, Fleming Weaver, abused him in 1977. The plaintiffs contended that the churches were aware of Boland's and Weaver's abuse, but concealed their actions, failed to protect the minor scouts, and failed to inform the public.

In August 2018, five of the plaintiffs — Alan McArthur and four of the Doe plaintiffs — filed their complaints against several defendants, including the churches. Four of the complaints purported to be a renewal action of a previously filed lawsuit from May 2017. The court consolidated the cases into a single action. In June 2019, Robert Doe filed a complaint asserting a substantially similar factual basis as the consolidated action, but with the addition of Weaver as a defendant.

With respect to the churches, the plaintiffs asserted claims of, among other things: public nuisance, violations of Georgia's RICO Act, fraudulent misrepresentation, fraudulent concealment, negligent hiring, and respondeat superior/vicarious liability. In two orders, the trial court dismissed the plaintiffs'

3

claims against the churches, finding, among other things, that their claims were time-barred. This appeal by the plaintiffs followed.

> A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his or her claim. We review the trial court's ruling on a motion to dismiss under the de novo standard of review. The dismissal of a complaint will be affirmed if right for any reason.[5]

With these guiding principles in mind, we now turn to the plaintiffs' claims of error.

1. Before we address the Supreme Court's holdings in *St. Joseph's*, we first examine the other bases the trial court enumerated in dismissing the complaints.

(a) The trial court found that the plaintiffs could not assert a renewal action against First Baptist because the plaintiffs never received permission from the court to add First Baptist to the original action.

In May 2017, McArthur and Dennis Doe filed their original complaint against Green Acres, Beech Haven, and other parties. In June 2017, the plaintiffs amended their complaint to add First Baptist as a defendant and John Doe and William Doe as

---

[5] (Citations and punctuation omitted.)*Walker County v. Tri-State Crematory*, 292 Ga. App. 411, 411-412 (664 SE2d 788) (2008).

4

plaintiffs. In response to motions to dismiss, the plaintiffs voluntarily dismissed their complaint in February 2018 before the court ruled on the motion. In August 2018, McArthur, John Doe, Timothy Doe, William Doe, and Dennis Doe each filed a complaint against the churches, including First Baptist. The complaints, with the exception of Timothy Doe's, purported to be a renewal action of the previous suit.

"When an amended complaint adds a defendant, the party seeking to amend under OCGA § 9-11-15 must seek leave of court as required by OCGA § 9-11-21."[6] If a plaintiff fails to seek leave of court, then the court may dismiss the newly added defendants from the case.[7]

In *Valdosta Hotel Properties v. White*, the plaintiff attempted to add a party without seeking leave of court.[8] That party filed a motion to dismiss, but before the trial court could address the issue, the plaintiff voluntarily dismissed her complaint.[9]

---

[6] (Citation and punctuation omitted.) *Crane v. State Farm Ins. Co.*, 278 Ga. App. 655, 656 (2) (629 SE2d 424) (2006); see OCGA § 9-11-21 ("Parties may be dropped or added by order of the court on motion of any party[.]"); OCGA § 9-11-15 (a) ("A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order.").

[7] See *Odion v. Varon*, 312 Ga. App. 242-244, 245 (3) (718 SE2d 23) (2011).

[8] 278 Ga. App. 206, 207 (628 SE2d 642) (2006)

[9] Id. at 208.

The plaintiff subsequently filed a purported renewal action against the new defendant.[10] This Court held that, because the plaintiff never sought leave of court to add the new defendant, the new defendant was not a defendant in the original action, and thus the plaintiff's subsequent lawsuit was not a renewal action against it.[11]

The plaintiffs here attempt to distinguish *Valdosta* by arguing that their failure to seek leave of court to add First Baptist as a party to the original complaints was a voidable defect, and thus the plaintiffs could assert a renewal action against First Baptist. While this Court has held in another case that a plaintiff may seek leave of court while simultaneously filing an amended complaint adding a party, the plaintiff must still receive permission to add the party.[12] In that case, "permission to add a party was required, and permission was given."[13] And although this Court has held that a party may file a renewal action where the original complaint was voidable, the original action was voidable in that case because it "was a defect correctable by

---

[10] Id.

[11] Id. at 213 (1).

[12] See *Wright v. Safari Club Intl., Inc.*, 322 Ga. App. 486, 494-495 (5) (745 SE2d 730) (2013).

[13] (Citation, punctuation, and footnote omitted.) Id. at 495 (5).

6

amendment[.]"[14] Here, the plaintiffs never sought leave to add First Baptist as a party, nor was this a defect correctable by amendment. Accordingly, the trial court did not err in finding that the plaintiffs failed to assert a proper renewal action.[15]

However, the trial court also found that the plaintiffs' renewal actions thus failed as a matter of law. But in *Valdosta*, the plaintiff's lawsuit was "undisputedly filed after the expiration of the . . . statute of limitation[.]"[16] As explained below, and based on the Supreme Court's decision in *St. Joseph's*, at this procedural posture the plaintiffs may introduce evidence within the framework of the complaint to satisfy the statutes of limitation. Thus, while we affirm the trial court's determination that the complaints were not renewal actions against First Baptist, we reverse the wholesale dismissal of the plaintiff's claims against that church.

(b) The trial court dismissed the claims brought by the Doe plaintiffs, finding that they could not bring the lawsuits under pseudonyms.

---

[14] *Buckler v. DeKalb County*, 290 Ga. App. 190, 192 (1) (659 SE2d 398) (2008).

[15] See *Valdosta*, 278 Ga. App. at 213 (1).

[16] 278 Ga. App. at 213 (1).

7

"In general, Georgia law mandates that parties to a lawsuit identify themselves in their respective pleadings and that every action be prosecuted in the name of the real party in interest."[17] However, under the liberal pleading standards of the Civil Practice Act,[18] this Court has rejected the "overly rigid" argument that a plaintiff's complaint is a nullity merely due to her use of a pseudonym.[19] Because the trial court relied solely on the Doe plaintiffs' use of a pseudonym in dismissing their complaints, we vacate the trial court's dismissal on this basis, and remand for reconsideration of this argument. We vacate, rather than simply reverse, because it is unclear from the appellate record when the churches and/or the trial court discovered the identity of the Doe plaintiffs.[20]

---

[17] (Citations omitted.) *Doe v. Archdiocese of Atlanta*, 328 Ga. App. 324, 325 (1) (761 SE2d 864) (2014); see OCGA § 9-11-10 (a) (requiring a complaint to "include the names of all the parties"); OCGA § 9-11-17 (a) ("Every action shall be prosecuted in the name of the real party in interest.").

[18] See OCGA § 9-11-1 et seq.

[19] *Archdiocese of Atlanta*, 328 Ga. App. at 327 (1).

[20] See id. at 327 (1) n.18 (leaving "for another day the question of whether the failure to disclose the identity of a pseudonym to the trial court and/or opposing party prior to the expiration of a statute of limitations would require a different result").

(c) The trial court dismissed the plaintiffs' claims against First Baptist regarding failure to train, supervise, and warn because the alleged abuse did not occur on church property.

> An employer may be liable for a failure to exercise due care in selecting, retaining or supervising an employee or volunteer when such a person departs from the prosecution of his business and commits a tort while acting without the scope of his authority. . . . [A]n employer may be held liable for such a tort only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff, such that it is reasonably foreseeable that the employee could cause the type of harm sustained by the plaintiff.[21]

The trial court focused on premises liability law in dismissing these claims, but the standard listed above does not involve premises liability. Indeed, this Court has allowed a negligent hiring, retention, and supervision claim and a failure to warn claim to proceed against a church where a volunteer allegedly molested a child next to, but not on, church property.[22] While the location might be relevant as to whether

---

[21] (Citations and punctuation omitted.) *Allen v. Zion Baptist Church*, 328 Ga. App. 208, 213-214 (1) (b) (761 SE2d 605) (2014).

[22] See *Allen*, 328 Ga. App. at 212-216 (1)-(2).

9

the employee or volunteer committed the abuse "under circumstances wholly unrelated to his employment[,]"[23] the trial court did not conduct that type of analysis.[24] Accordingly, because the trial court did not analyze these claims under the proper framework, we reverse the dismissal of these claims.

2. We now address the Supreme Court's holdings in *St. Joseph's*. In our initial decision in *McArthur I*, we held that the plaintiffs could not benefit from fraud-based tolling because the abuse itself revealed that the church had wronged the plaintiffs.[25] The Supreme Court rejected this reasoning, holding that a plaintiff could introduce evidence to support tolling with respect to claims premised on the church's conduct.[26] We now examine the plaintiffs' claims under this framework.

Under OCGA § 9-3-96, "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing

---

[23] (Citation and punctuation omitted.) Id. at 213 (1) (a).

[24] See id. (holding that an issue of fact existed as to whether an off-property attack took place "under circumstances not 'wholly unrelated' to [the perpetrator's] employment as a youth group volunteer").

[25] See *McArthur I*, 361 Ga. App. at 879-880 (2).

[26] See *St. Joseph's*, 313 Ga. at 571 (3).

10

an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."

> A plaintiff who seeks to toll a limitation period under OCGA § 9-3-96 must make three showings: first, that the defendant committed actual fraud; second, that the fraud concealed the cause of action from the plaintiff, such that the plaintiff was debarred or deterred from bringing an action; and third, that the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation.[27]

(a) The plaintiffs must first show that the churches committed an actual fraud. "Doing so requires a showing of either (1) actual fraud involving moral turpitude, or (2) a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence."[28] Like the plaintiff in *St. Joseph's*, the plaintiffs here sufficiently alleged both types of fraud.

The complaints alleged that the defendants "fraudulently misrepresented, failed to disclose and actively concealed the danger posed by" Boland and Weaver "specifically." The complaints also alleged that the churches elevated Boland to

---

[27] (Citations and punctuation omitted.) *St. Joseph's*, 313 Ga. at 561 (2).

[28] (Citation and punctuation omitted.) See *St. Joseph's*, 313 Ga. at 561 (2) (a).

11

leadership roles and misrepresented the circumstances in which he left the churches. Like the allegations in *St. Joseph's*, "[w]e cannot say to a legal 'certainty' at the motion-to-dismiss stage that [the plaintiffs] could not introduce evidence supporting this contention."[29]

Additionally, the plaintiffs adequately pled actual fraud based on a fraudulent breach of a duty to disclose that exists because of a confidential relationship. "A confidential relationship exists where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith."[30] The Supreme Court recognized in *St. Joseph's* that a confidential relationship can exist between a church and its minor parishioners.[31] The complaints alleged that the defendants had a "special relationship" with the churches to "safeguard [the plaintiffs] and act as a reasonable parent would under . . . similar circumstances." While the relationship between the churches and the plaintiffs may be a bit more attenuated — because Weaver and Boland were scoutmasters and not priests — "we

---

[29] *St. Joseph's*, 313 Ga. at 562 (2) (a).

[30] (Citations and punctuation omitted.) *St. Joseph's*, 313 Ga. at 562 (2) (a).

[31] See id. at 563-564 (2) (a).

12

cannot say that [the plaintiffs] could not possibly introduce evidence establishing the existence of a confidential relationship between [the plaintiffs] and the [churches]."[32]

(b) Tolling under OCGA § 9-3-36 also requires that a plaintiff show that the defendant's "fraud concealed a wrong done to a would-be plaintiff so as to deter or debar the would-be plaintiff from his or her cause of action."[33] The Supreme Court in *St. Joseph's* held that, other than the plaintiff's respondeat-superior claim, "each of [the plaintiff's] claims against the Church turn[ed] on whether the Church knew or had reason to know that [the priest] presented a danger to [the plaintiff]."[34] The plaintiffs here alleged that the churches "actively conceal[ed]" Boland and Weaver's crimes and that the plaintiffs "had no way to obtain this information independently." At the motion-to-dismiss stage and given the allegations in the complaint,

> we cannot rule out the possibility that [the plaintiffs] could introduce evidence showing that the [churches'] alleged fraudulent concealment of [their] knowledge about [Boland and Weaver] 'debarred or deterred' [the plaintiffs] from discovering [their] causes of action against the

---

[32] (Citation and punctuation omitted.) Id. at 563 (2) (a).

[33] (Citation and punctuation omitted.) *St. Joseph's*, 313 Ga. at 564 (2) (b).

[34] Id. at 568 (2) (b). The plaintiff in *St. Joseph's* alleged that he did not know the church had wronged him until the church publicly acknowledged in 2018 that the priest had been credibly accused of sexual abuse. Id. at 564 (2) (b).

13

[churches] for negligent training, supervision, and retention, failure to warn and provide adequate security, breach of fiduciary duty, and fraudulent misrepresentation and concealment.[35]

(c) To satisfy the third requirement for fraud-based tolling under OCGA § 9-3-96, a plaintiff must show that he "exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation. Fraud will toll the limitation period only until the fraud is discovered or by reasonable diligence should have been discovered."[36]

The complaints alleged that the churches participated in an "elaborate scheme" to conceal Boland's and Weaver's crimes and the prevalence of this type of abuse, and that the plaintiffs could not have "independently" obtained this information. The complaints further alleged that the plaintiffs discovered "within the statutory period" that they were not the only victims, and that the churches were aware of the abuse.

Because a confidential relationship may have existed between the plaintiffs and the churches, as discussed above, the plaintiffs may be subject to a lesser standard of

---

[35] Id.

[36] (Citations and punctuation omitted.) *St. Joseph's*, 313 Ga. at 568 (2) (c).

14

reasonable diligence.[37] But regardless of whether a lesser standard is applicable here, the plaintiffs adequately pled reasonable diligence given their allegations that they only recently discovered "within the statutory period" the extent of the churches' involvement. "In reviewing a motion to dismiss, . . . [the court] need determine only whether it is not possible that [the plaintiff] could later introduce evidence supporting his reasonable diligence."[38]

For these reasons, because the plaintiffs might be able to introduce evidence supporting tolling under OCGA § 9-3-96 as to their claims for fraudulent misrepresentation, fraudulent concealment, failure to provide adequate security, failure to train, supervise, and monitor, failure to warn, and negligent retention, we reverse the trial court's dismissal of these claims as time-barred.

3. We next consider the plaintiffs' claims brought under the RICO Act. In *McArthur I*, we held that the plaintiff's RICO claims were time-barred because the "plaintiffs here knew they were injured by a pattern of misconduct when the sexual abuse began and continued for months and years while the churches did not

---

[37] See *St. Joseph's*, 313 Ga. at 568-569 (2) (c).

[38] Id. at 570 (2) (c).

15

intervene."[39] Although the Supreme Court did not address a RICO claim in *St. Joseph's*, we must reconsider our analysis in light of the Court's reasoning in that case.

"The Georgia civil RICO statute prohibits a person from obtaining money or participating in an 'enterprise' through a 'pattern of racketeering activity.' The term 'racketeering activity' means the commission of at least one of the enumerated types of crimes listed in the RICO statute, also known as predicate offenses."[40] The RICO statute also prohibits a conspiracy to violate the statute.[41] "Under Georgia law, a person may be found liable for RICO conspiracy if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts."[42]

The plaintiffs in their complaint allege two separate but related schemes. The first was a scheme by Boland, Weaver, and other scoutmasters to commit sexual

---

[39] 361 Ga. App. at 880 (3).

[40] *Z-Space, Inc. v. Dantanna's CNN Center, LLC*, 349 Ga. App. 248, 252 (2) (825 SE2d 628) (2019) (citing OCGA § 16-14-4 (a), (b)).

[41] See OCGA § 16-14-4 (c).

[42] (Citation and punctuation omitted.) *Wylie v. Denton*, 323 Ga. App. 161, 165 (1) (746 SE2d 689) (2013) (physical precedent only).

16

abuse against children; the second scheme was to cover up the first scheme through deliberate fraudulent action in order to avoid reputational harm and lawsuits. The predicate acts alleged in furtherance of the first scheme were assault and battery. The plaintiffs allege a myriad of predicate acts allegedly committed in furtherance of the coverup, particularly by the Boy Scouts of America, including making false statements to public employees, influencing witnesses, and committing mail fraud, perjury, and theft. The plaintiffs allege two different types of injuries — childhood abuse and the "reopening of old wounds" as a result of the coverup.

Even assuming that the plaintiffs could prove the facts alleged in their complaint, they failed to show the required causal connection between the predicate acts and their injuries. "To satisfy the proximate cause element of RICO, a plaintiff must show that [his] injury flowed directly from at least one of the predicate acts."[43] While the plaintiffs were certainly directly injured by the alleged childhood abuse, the plaintiffs did not allege that the churches committed an "overt act to effect the object of" the abuse.[44] That is, the churches did not join the scheme by Boland, Weaver, and other scoutmasters to commit sexual abuse against children. And

---

[43] *Wylie*, 323 Ga. App. at 166 (1).

[44] See OCGA § 16-14-4 (c) (1).

17

although the plaintiffs did allege that the churches joined the conspiracy with the Boy

Scouts of America to cover up the abuse, the plaintiffs' injuries did not directly flow

from the coverup. A plaintiff "must show a direct nexus between at least one of the

predicate acts listed under the RICO Act and the injury [he] purportedly sustained."[45]

The injuries from the abuse did not flow from the coverup, and the injury of

"reopening old wounds" is too attenuated to meet the direct nexus requirement.[46]

Accordingly, the trial court did not err in dismissing the plaintiffs' RICO

claims.

4. Finally, we reaffirm our holdings in *McArthur I* that were not implicated by

the Supreme Court's decision in *St. Joseph's*.

(a) In *McArthur I*, we held that OCGA § 9-3-33.1 provides a statute of repose

such that it cannot be tolled.[47] Under OCGA § 9-3-33.1 (a) (2), "[n]otwithstanding

Code Section 9-3-33 [setting forth the general statute of limitation for injury claims]

any civil action for recovery of damages suffered as a result of childhood sexual

---

[45] *Nicholson v. Windham*, 257 Ga. App. 429, 430 (1) (571 SE2d 466) (2002).

[46] See *Wylie*, 323 Ga. App. at 168 (1) (holding that the plaintiff could not sustain a RICO claim where she sought to recover for "indirect" injuries).

[47] See 361 Ga. App. at 878-879 (1).

abuse committed before July 1, 2015, shall be commenced on or before the date the plaintiff attains the age of 23 years." We reasoned that this code section constituted a statute of repose because "[t]he deadline for filing an action — a plaintiff's twenty-third birthday — bears no relation to when the cause of action accrued."[48]

By its terms, OCGA § 9-3-33.1 only applies to actions seeking damages for "childhood sexual abuse[,]" which is defined in subsection (a) (1). In *McArthur I*, we therefore determined that OCGA § 9-3-33.1 did not apply to most of the claims levied against the churches.[49] Only the respondeat superior claim falls within the purview of OCGA § 9-3-33.1. And even if OCGA § 9-3-33.1 is not a statute of repose such that it can be tolled, the plaintiffs have not alleged facts sufficient to toll this claim. The Supreme Court in *St. Joseph's* held that, where a plaintiff seeks to hold a church vicariously liable for the abuse itself, the claim is not subject to tolling based on the suppression of information regarding the church's knowledge of the priest's dangerousness.[50] Similarly here, the plaintiffs would have known the essential facts

---

[48] Id. at 879 (1).

[49] See 361 Ga. App. at 879 (1).

[50] See *St. Joseph's*, 313 Ga. at 565 (2) (b).

19

giving rise to a potential respondeat-superior claim against the churches in the 1950s, 1960s, and 1970s when the abuse allegedly occurred.

Accordingly, because the plaintiffs did not timely file their respondeat superior claims within either the statute of limitation or statute of repose, the trial court did not err in dismissing this claim.

(b) In *McArthur I*, we also held that the alleged abuse, even against multiple victims across multiple years, was insufficient to constitute a public nuisance.[51] We reasoned that "the effect of this conduct, if proven, certainly would demonstrate terrible injury to the victims of the abuse, but it did not harm all persons who came into the sphere of church operations. Nor did the plaintiffs allege that the conduct had appreciable blighting effect on the surrounding community, such as a gambling establishment or unlicensed liquor store."[52] Accordingly, the trial court did not err in dismissing the public nuisance claim.

5. In summary, we affirm the trial court's dismissal of the RICO, respondeat superior, and public nuisance claims. We reverse the trial court's dismissal of the fraudulent misrepresentation, fraudulent concealment, failure to provide adequate

---

[51] See 361 Ga. App. at 881 (4).

[52] (Citations and punctuation omitted.) Id.

20

security, failure to train, supervise, and monitor, failure to warn, and negligent retention claims, as well as the derivative attorney fee and punitive damages claims. We vacate the trial court's dismissal of the Doe complaints, and remand for reconsideration of the issue in accordance with this opinion.[53]

We emphasize that our determinations here in allowing some claims to proceed will not be dispositive as the case progresses. That is because at the motion-to-dismiss stage, we consider only whether the plaintiffs could "possibly introduce evidence" to support their contentions.[54]

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded. Brown, J., and Senior Appellate Judge Herbert E. Phipps, concur.*

---

[53] The plaintiffs did not challenge in their appellate brief the trial court's dismissal of their claims for negligent infliction of emotional distress. Nor did the plaintiffs challenge the trial court's winnowing of the plaintiffs' complaints to the respective churches each plaintiff attended, rather than allowing each plaintiff to sue all three churches. We do not disturb those rulings here.

[54] See *St. Joseph's*, 313 Ga. at 563 (2) (a).